VELMA HAMMACK

*v.*

JAMES EDWARD WISE

(No. 13435)

Decided January 21, 1975.

*Donald E. Price* for plaintiff in error.

*Wilson, Frame & Rowe, Clark B. Frame* for defendant in error.

CAPLAN, JUSTICE:

This is an appeal from a final order of the Circuit Court of Monongalia County in a habeas corpus proceeding instituted in that court by Velma Hammack wherein Mrs. Hammack sought to obtain the custody of the illegitimate infant son of her deceased daughter. The putative father of said son filed a return and an answer to the petition and issue was joined. After a hearing on said pleadings, at which evidence was adduced on behalf of each party, the court on May 14, 1973 entered judgment awarding custody of the child to the petitioner, Velma Hammack. It is from that judgment that the appellant, James Edward Wise, prosecutes this appeal.

The basic question presented for resolution on this appeal is: as between the maternal grandmother, whose daughter died in childbirth, and the putative father of the illegitimate child, who has the legal right to said child's custody?

The child, James Edward Wise, II, the subject of the habeas corpus proceeding below, was born on January 20, 1973 to James Edward and Victoria Catherine Wise at Monongalia General Hospital in Morgantown, West Virginia. This is reflected by the certificate of the hospital which is included in the record as respondent's Exhibit D. The evidence of record reveals that Victoria

Catherine Wise died of complications arising from the birth of the subject infant on January 21, 1973. The name on her death certificate was Victoria Catherine Wise.

Upon release from the hospital the infant child was taken by his father, James Edward Wise, and his maternal grandmother, Velma Hammack, to the residence of Mrs. Hammack where Mr. Wise and Victoria Catherine Wise for some time had been residing. There the child remained in the care of the father and the maternal grandmother. Mr. Wise, being regularly employed and in such employment being required to travel daily to Haywood, West Virginia, a distance of about thirty-five miles, the daily routine care for the infant was left largely to Mrs. Hammack. Mr. Wise continued to reside in the home of Mrs. Hammack, together with the child, until some time after the institution of the habeas corpus proceeding.

In her petition for a writ of habeas corpus filed in the court below the petitioner, Mrs. Hammack, relates the facts concerning the birth of the child very much as hereinabove set out. She therein asserted that she had assumed the custody and care of said child; that the child is in her home; that the respondent claims to be the putative father of the illegitimate child and therefore entitled to the legal custody of said child; that she is the maternal grandmother of the child and is financially able and morally suited to have the legal custody of the child; and that her continued custody would be in the best interests of the child. She does not, in her petition, deny that the respondent is, in fact, the father of the child; nor does she in any manner allege that James Edward Wise is an unfit or for any reason an improper person to have the custody of his infant child.

Although we have carefully examined the evidence adduced before the court below, we deem it necessary to comment on such evidence in any great detail here. Suffice to say that just as there was no allegation in the petition attacking the parental fitness of the father nei-

ther was there an iota of evidence to show that he was unfit to care for his child. The evidence shows the respondent father to be an industrious person who is steadily and regularly employed in the construction business. His earnings of recent years has been approximately $14,000 per year.

In relation to the future care of the child Mr. Wise testified that he would hire someone to come in and take care of the child while he was at work and that he would definitely maintain a home for said child. Although not controlling in relation to Mrs. Hammack's ability to properly care for the child, the evidence reveals that she has no income of her own but relies for support upon the Social Security and Pension benefits of her seventy-six year old father who lives in her home and upon what she is able to get from her brother. According to her testimony the home in which she lives is in a rural area, there being no furnace or hot water, nor is there a toilet in the house. There is evidence that Mrs. Hammack has been ill and that she is charged with the care of her aged father, her brother and a Mr. Shaffer, who also lives in the house.

As herein noted and as readily admitted by Mrs. Hammack, it is unrefuted that James Edward Wise is the father of the child, James Edward Wise, II. Furthermore, the fact that the child was born out of wedlock is of no consequence in the treatment of the issue involved in this case. It was settled in *Stanley v. Illinois*, 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972) that a father of an illegitimate child must receive the same treatment and consideration as that received by any parent with respect to the termination of his paternal rights. Therefore, the instant case will be decided on its facts, applying accepted legal principles relating to child custody and uncomplicated by any doubt as to the parenthood of the father or the question of the illegitimacy of the child.

It has become firmly established in this jurisdiction that a parent has a natural right to the custody of his or

her infant child and that he or she cannot be deprived of that right unless upon cogent and convincing proof of misconduct, neglect, immorality, abandonment or other dereliction of duty reflecting unfitness as a parent. This was forcefully expressed in the syllabus of *State ex rel. Kiger v. Hancock*, 153 W. Va. 404, 168 S.E.2d 798 (1969), which we quote with approval as follows:

> A parent has the natural right to the custody of his or her infant child and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment, or other dereliction of duty, or has waived such right, or by agreement or otherwise has permanently transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts.

Legislative recognition of the *right* of a parent to the custody of his or her child has been expressly noted in W. Va. Code, 1931, 44-10-7, as amended. In that code provision, after prescribing certain duties of an appointed guardian of a ward, the parent's right to custody is mandatorily expressed as follows: "But the father or mother of any minor child or children shall be entitled to the custody of the person of such child or children, and to the care of his or their education."

While the welfare of the child in a contest involving his custody is of paramount and controlling importance and is the "polar star by which the discretion of the court will be guided", *State ex rel. Harmon v. Utterback*, 144 W. Va. 419, 108 S.E.2d 521 (1959), such "polar star" concept will not be invoked to deprive an unoffending parent of his natural right to the custody of his child. Although this Court adheres to the "polar star" concept in child custody cases, it has refused to apply it in cases where the parents have not abandoned the child or have in no manner been proved to be unfit to have the care and custody of such child. "While courts always look to the best interests of the child in such controversies, we

know of no rule of law requiring the denial of legal custody of an infant to one legally entitled thereto merely because some other person might possibly furnish the child a better home or better care." *State Department of Public Assistance v. Pettrey*, 141 W. Va. 719, 92 S.E. 2d 917 (1956).

The right of a parent to have the custody of his or her child is founded on natural law and, while not absolute, such right will not be taken away unless the parent has committed an act or is guilty of an omission which proves his or her unfitness. *See, State ex rel. Acton v. Flowers*, 154 W. Va. 209, 174 S.E. 2d 742 (1970); *State ex rel. Kiger v. Hancock, supra; Holstein v. Holstein*, 152 W. Va. 119, 160 S.E.2d 177 (1968); *Whiteman v. Robinson*, 145 W. Va. 685, 116 S.E.2d 691 (1960); and *Hoy v. Dooley*, 144 W. Va. 64, 105 S.E.2d 877 (1958).

Cases reflecting a contest between parties for the custody of a child of tender years are among the most perplexing and difficult to be decided by a court. As herein noted, the prime consideration is the welfare of the child. However, there is a strong presumption that the welfare of the child is well protected when he is in the custody of an unoffending natural parent. Furthermore, it has been forcefully demonstrated by the cases cited above that the natural right of a parent to the custody of his child will be recognized and enforced by the courts. One's right to conceive and to raise his children has found protection in the Due Process Clause of the Fourteenth Amendment and also on the Equal Protection Clause thereof, as well as the comparable clauses of the West Virginia Constitution. *In Re Willis*, ____ W. Va. ____, 207 S.E.2d 129 (1973); *Stanley v. Illinois, supra. See also, Meyer v. Nebraska*, 262 U.S. 390, 399, 67 L. Ed. 1042, 43 S. Ct. 625 (1923); *Skinner v. Oklahoma*, 316 U.S. 535, 541, 86 L. Ed. 1655, 62 S. Ct. 1110 (1942).

Applying the foregoing principles to the instant case as reflected by the record evidence, we are of the opinion and hold that the trial court erred in awarding the custody of James Edward Wise, II to Velma Hammack.

Our decision is based on the well established principle of law that a parent is entitled to the custody of his child and unless clear and convincing proof that such parent is unfit, his right to such custody will be recognized and enforced. In the case before us there is not even an allegation of unfitness on the part of the parent, James Edward Wise; nor was any evidence offered to show that he was an unfit person. To the contrary, the evidence, even that adduced from the petitioner and her witnesses, demonstrated that the father was a steady, reliable person morally and financially able to care for the child.

Although the exercise of discretion by a trial court in awarding custody of a child will not ordinarily be disturbed, when it clearly appears on appeal that such discretion has been abused, the decision awarding custody will be reversed. We find such abuse of discretion and the judgment of the Circuit Court of Monongalia County is reversed.

*Reversed.*