607 S.E.2d 531

**In re the ADOPTION OF WILLIAM ALBERT B., Katy Ann B., and Sierra Nicole B.**

**No. 31728.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 15, 2004.

Decided Dec. 8, 2004.

**426**

Judith A. Isner, Harrisville, for Appellant Clyde Dewayne B.

Gary L. Rymer, Middlebourne, for Appellees Charles and Patricia B.

Carolyn G. Flannery, Snyder & Hassig, New Martinsville, Guardian ad Litem for the Children.

## PER CURIAM:

In this appeal from the Circuit Court of Tyler County, we are asked to review orders holding that a father had abandoned his three children, and allowing those children to be adopted by their maternal grandparents.

As set forth below, we reverse the circuit court's orders.

### I.

This case presents a narrow question of fact that, as a result of forum shopping, is posited squarely between two courts with overlapping and/or conflicting jurisdiction. The consequence is that the interests of three children have been crushed in between their parents and their grandparents, who are competing for the custody and control of those children in different forums.

The question of fact before the Court concerns whether or not a father abandoned his three children, such that his parental rights may be terminated and the children may be adopted by their maternal grandparents. The question of fact arises, however, as a result of an adoption action filed by the maternal grandparents in the Circuit Court of Tyler County, while at the same time the children were the subject of a pending custody dispute in a divorce action between their parents filed in the Family Court of Ritchie County.

The appellant, Clyde Dewayne B., and his former wife, Sarah Jo M., are the parents of three children: William Albert B., Katy Ann B., and Sierra Nicole B.[1] They were divorced by an order entered on July 18, 2000, by the Family Court of Ritchie County, and the family court order adopted a parenting plan agreed to by the appellant and his former wife. On paper, the parenting plan allowed the children to reside primarily with Sarah Jo M., while the appellant was to have par-

---

1. Consistent with our past practice in juvenile and domestic relations cases which involve sensitive facts, we use initials in place of the last names of the parties. *In the Matter of Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

enting time with his children every weekend and on alternating holidays.

In reality, it appears that the children resided only occasionally with their mother, but spent much of their time in Tyler County residing with their maternal grandparents, appellees Charles B. and Patricia B. The appellant asserts he was able to spend weekends with his children in 2000 and 2001, but by late 2001 he asserts that the appellees routinely prevented the appellant from seeing his children.

On January 3, 2002, the appellant plead guilty to second-offense driving under the influence and driving without a license suspended for driving under the influence, and was sentenced to two six-month concurrent sentences in the North Central Regional Jail. While he was incarcerated, the appellant contends he tried to correspond with his children, who were residing with their appellee maternal grandparents. However, on March 2, 2002, he received a letter from appellee Patricia B. telling the appellant:

"Don't write to them again. I won't give it to them so you're wasting your time and money.... I do all the work of raising these kids and you & yours think you should get them on the weekends to play with and then send back? I don't think so.... What makes you think that I am going to let you or your family have anything to do with them[?]"

In April 2002, the appellant filed a motion seeking work release. The motion was granted, and the appellant worked for a local roofing company during the remainder of his term in jail. Pursuant to the family court's order, the appellant's child support obligation was withheld from the appellant's paycheck and forwarded to Sarah Jo. M. Unfortunately, it appears that Sarah Jo. M. never forwarded the child support payments on to the appellees.

At the same time, the appellees filed a petition with the Family Court of Tyler County seeking an order allocating custodial responsibility of the children to the appellees. In the petition, the appellees alleged that the children had been abandoned by the appellant and Sarah Jo M., had been abused and neglected, and had witnessed abuse between their parents. In the pleading, the appellees claimed that they were unaware of any proceeding in any other jurisdiction regarding the custody of the appellant's children—despite the fact that a divorce and custody action involving the appellant and the appellees' daughter remained pending before the Family Court of Ritchie County. Three days after the appellant was released from incarceration, on May 24, 2002, the appellant and Sarah Jo. M. filed a notarized statement with the Family Court of Tyler County asking that the court enforce the existing parenting plan that had been approved by the Family Court of Ritchie County.

On June 19, 2002, the Family Court of Tyler County entered an order dismissing the appellees' petition for lack of jurisdiction and venue. The court concluded that the pleading filed by the appellees sounded in abuse and neglect, matters that were solely within the jurisdiction of the circuit courts, not the family courts. Further, the court ruled that any issues involving the custody of the children should be resolved in the Family Court of Ritchie County.

That same day, the appellees filed the instant case, a petition to adopt the appellant's three children, in the Circuit Court of Tyler County. As grounds for the petition, the appellees asserted that the appellant and Sarah Jo M. had abandoned the children. On June 19, 2002, the circuit court entered an order giving the appellees temporary custody of the children pending a final hearing.

Subsequent to the filing of the petition, the children's mother, Sarah Jo M., signed a "consent to adopt" that was filed with the circuit court. In this document, Sarah Jo M. "voluntarily and unequivocally" allowed the appellees to adopt her children, and forever relinquished and terminated all of her parental rights and obligations regarding the children. However, the document goes on to state "[t]hat this consent is conditional and effective when and if the parental rights of [appellant] Clyde [B.] are terminated by the Court," and that the consent could be revoked if the circuit court did not terminate the appellant's parental rights or the appellees withdrew their adoption petition.

The record suggests that over the next year, proceedings were conducted by both the Circuit Court of Tyler County and the Family Court of Ritchie County, proceedings that resulted in competing orders. For one, both courts appear to have appointed guardians *ad litem* for the children. Further, contrary to the circuit court's order, the family court issued an order on May 22, 2003, giving temporary legal and physical custody of the children to the appellant. The appellees responded to the family court's order by filing a motion for an injunction in the circuit court to enjoin the family court's order; the circuit court refused to issue an injunction, citing a lack of jurisdiction.

Hearings were conducted on the adoption petition by the circuit court in June 2003, and orders were issued on September 4 and September 17, 2003. In those orders, the circuit court determined after an inquiry "into the totality of the circumstances" that the appellant had abandoned his children. The circuit court found, among other things, that the appellant "did not send mail to or telephone his children," "did not pay cash support to the [appellees]" and "paid no support of any type except what was withheld from his income[.]" The circuit court concluded that while the appellant did want to retain contact with his children, he "did not want to be a parent with all the concomitant duties and obligations existing between himself and the children" and there "is not a scintilla of evidence to show that he intends to change his life style."

Based upon its findings, the circuit court terminated the parental rights of the appellant to the children, and granted the adoption of the children by the appellees. However, the circuit court did allow the appellant to have reasonable supervised visitation.

The appellant now appeals the circuit court's September 4 and September 17, 2003 orders.

## II.

■ "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." Syllabus Point 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996).

## III.

■ The appellant contends that the circuit court erred when it found that the appellant had abandoned his children. The appellant assigns as error two of the circuit court's conclusions: the court's finding that the appellant had abandoned his children by not financially supporting them, when his child support obligation had been withheld from his paychecks; and the court's finding that the appellant had abandoned his children when the appellant had repeatedly tried to enforce the parenting plan entered by the Family Court of Ritchie County.

The appellees argue that the appellant's statement of the facts is wholly wrong, and argue that the factual positions taken by the appellant were rejected by the circuit court. The appellees contend, as the circuit court found, that there is no credible evidence that the appellees did anything to prevent the appellant from having contact or visitation with his children.

■ We have repeatedly stated that a biological parent has a right to the custody of his or her child. In the Syllabus to *State ex rel. Kiger v. Hancock*, 153 W.Va. 404, 168 S.E.2d 798 (1969), we stated that:

A parent has the natural right to the custody of his or her infant child and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment, or other dereliction of duty, or has waived such right, or by agreement or otherwise has permanently transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts.

*In accord*, Syllabus Point 2, *Hammack v. Wise*, 158 W.Va. 343, 211 S.E.2d 118 (1975). While there may be situations where the welfare of the child and the natural parent are in conflict, "there is a strong presumption that the welfare of the child is well protected when he is in the custody of an unoffending

natural parent." *Honaker v. Burnside*, 182 W.Va. 448, 451, 388 S.E.2d 322, 324 (1989), *citing Hammack*, 158 W.Va. at 347, 211 S.E.2d at 121.

However, as stated in *State ex rel. Kiger*, *supra*, abandonment of a child voids the presumption that a biological parent is fit to have custody. We have defined abandonment to mean "any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child." *Matter of Adoption of Schoffstall*, 179 W.Va. 350, 352, 368 S.E.2d 720, 722 (1988) (citations omitted). We gave a broad outline of what constitutes abandonment in the case of *In re Harris*, 160 W.Va. 422, 428, 236 S.E.2d 426, 430 (1977):

> Where a father abandons his children, provides no support and maintenance, does not visit the children, and does not in any other reasonable way, given his position in life and the opportunities for the exercise of his parental rights, exercise the authority or undertake the responsibilities of a parent, ... we would not be concerned with the father's protectable interest because he would have waived such interest by abandonment.

Similarly, *W.Va.Code*, 48–22–102 [2001] defines abandonment to mean:

> "Abandonment" means any conduct ... that demonstrates a settled purpose to forego all duties and relinquish all parental claims to the child.

In this case we are guided by *W.Va.Code*, 48–22–102, and by *W.Va.Code*, 48–22–306 [2001] which essentially codifies *In re Harris* and *Schoffstall*, and provides clear standards where courts may presume abandonment. *W.Va.Code*, 48–22–306 sets forth conduct on the part of the parent that, if found, requires a circuit court to presume that a parent has foregone all parental duties and abandoned a child over the age of six months. The statute states, in pertinent part:

> (a) Abandonment of a child over the age of six months shall be presumed when the birth parent:

> (1) Fails to financially support the child within the means of the birth parent; and

> (2) Fails to visit or otherwise communicate with the child when he or she knows where the child resides, is physically and financially able to do so and is not prevented from doing so by the person or authorized agency having the care or custody of the child: Provided, That such failure to act continues uninterrupted for a period of six months immediately preceding the filing of the adoption petition.

> * * *

> (d) Notwithstanding any provision in this section to the contrary, any birth parent shall have the opportunity to demonstrate to the court the existence of compelling circumstances preventing said parent from supporting, visiting or otherwise communicating with the child[.]

Examining the evidence of record, we conclude that the evidence does not support a presumption that the appellant abandoned his children as set forth in *W.Va.Code*, 48–22–306. The evidence of record indicates that, in the six months preceding the filing of the adoption petition on June 19, 2002, the appellant met his legal obligation to attempt to financially support his children within his means by having his child support obligation withheld from his paychecks.[2] That the support money was forwarded to the children's legal custodian, their mother, and never spent to assist the *de facto* custodians of the children, the appellees, is a painful fact that the circuit court should not have counted against the appellant.

Further, the record indicates that in the six months preceding the filing of the adoption petition the appellant did attempt to visit or communicate with the children when he was able to do so, but was prevented from doing so by the appellees. As one of the appellees, Patricia B., testified on cross-examination:

> Q. So you just took it upon yourself to defy the parenting plan that your daughter

---

**2.** *W.Va.Code*, 48–18–115 [2001] requires that if a parent receives assistance from the Bureau for Child Support Enforcement, all child support payments that are owed to the parent must be withheld from the obligor parent's earnings and paid to the Bureau for Child Support Enforcement. The Bureau must then disburse those support payments to the obligee parent.

and [the appellant] had come up with during the divorce?  ...

A.  Yeah. I took it upon myself to take those babies home and take care of them.

Q.  And you refused to let [the appellant] exercise his visitation on Christmas, even though that's what the parenting plan called for, is that correct?

A.  That's correct....

Q.  So you interfered with [the appellant's] custodial privileges, is that correct?

A.  Yeah....

Q.  So do you feel that, for whatever your reason that you believe you have, that you have prevented [the appellant] from having any contact with his children for a substantial period of time?

A.  Yeah.

Q.  How long would you say you've prevented that contact?

A.  Around two years or maybe a little less.

Q.  Do you think from December of 2001, through now you've prevented any contact between [the appellant] and his children?

A.  Yeah.

The record in the instant case supports the conclusion that the appellant followed the proper, established legal route to obtain custody and visitation with his children: by motions before the Family Court of Ritchie County to enforce his visitation privileges, and later to obtain custody. The appellees thwarted the appellant's efforts by filing opposing litigation, first in the Family Court of Tyler County, and later in the Circuit Court of Tyler County. At the same time, the appellees admittedly denied the appellant contact with his children, and later asserted that lack of contact as a ground for terminating the appellant's parental rights.

■  The appellee asserts, however, that even if the presumption contained in *W.Va. Code*, 48–22–306 cannot be met, then there is still substantial evidence in the record as a whole to support a finding under *W.Va.Code*, 48–22–102 that the appellant's conduct "demonstrates a settled purpose to forego all duties and relinquish all parental claims to the child[ren]." We disagree.

■  "The standard of proof required to support a court order limiting or terminating parental rights to the custody of minor children is clear, cogent and convincing proof." Syllabus Point 6, *In re Willis,* 157 W.Va. 225, 207 S.E.2d 129 (1973). We do not believe that clear, cogent and convincing proof exists in the record establishing that the appellant had a settled purpose to forego all parental duties, and to relinquish all parental responsibilities toward his children. While the record suggests that the appellant has many weaknesses as a father, and is by no means a "perfect" parent, that alone is not sufficient to terminate the appellant's right to attempt to raise his children.

We therefore find that the circuit court erred in finding that the appellant had abandoned his children, in terminating the appellant's parental rights, and in permitting the appellees to adopt the appellant's children.

### IV.

The orders of the Circuit Court of Tyler County dated September 4, 2003 and September 17, 2003 are reversed, and the adoptions are set aside. This matter is remanded to the Circuit Court of Tyler County for further proceedings to determine temporary custody of the children, pending action by the Family Court of Ritchie County. The circuit court should approach temporary custody and any further proceedings with care and with the best interests of the children in mind, and fashion any future orders so as to minimize the impact of the court's orders upon the children.

The record indicates that the Family Court of Ritchie County has stayed all proceedings regarding visitation and custody, as between the natural parents, pending the conclusion of these adoption proceedings. With our holding today, it would appear from the record that the family court is the likely place for future custodial questions to be decided. Accordingly, the Circuit Court of Tyler County should endeavor to communicate and coordinate its actions with the Family Court of Ritchie County, again so as to minimize the degree of distress any future transition may cause upon the parties and the children.

The Clerk of the Court is directed to certify a copy of this opinion to the Circuit Court of Tyler County, and to the Family Court of Ritchie County for inclusion in the record of *In re the Children of Sarah Jo (B.) M. and Clyde Dewayne B.*, No. 00–D–40, and to otherwise advise the family court of this Court's actions.

Reversed and Remanded.

Justice McGRAW dissents.