# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **D.N.-1 and D.N.-2**

**No. 16-1055** (McDowell County 15-JA-19-M & 15-JA-20-M)

**FILED**

**June 9, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother C.N., by counsel Brittany R. Puckett, appeals the Circuit Court of McDowell County's October 25, 2016, order terminating her parental rights to D.N.-1 and D.N.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Cynthia A. Majestro, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in failing to rule on her motion for a post-adjudicatory improvement period, terminating her parental rights, and denying her post-termination visitation with the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2015, the DHHR filed an abuse and neglect petition against petitioner and other adult respondents. Eight days later, the DHHR filed an amended petition. According to the DHHR, petitioner brought then seven-month-old D.N.-1 to the hospital with a crushed left femur and a spiral break on his left ankle. The parties' reports of how the child suffered these injuries, per the DHHR, were "varied and uncertain." Petitioner and the child's grandmother suggested that then two-year-old D.N.-2 had been caught jumping on and kicking the child on several occasions and had likely caused the injuries. Thereafter, D.N.-1 was transported to a hospital in Charleston, West Virginia, where a physician concluded that the child's injuries were not consistent with petitioner's explanation. Moreover, the DHHR indicated that petitioner still had

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Further, because the children share the same initials, we will refer to them as D.N.-1 and D.N.-2 throughout the memorandum decision.

1

an open case with the agency due to her prior residence lacking running water and being in deplorable condition. Petitioner moved from that residence and into the home of the children's grandmother. Petitioner thereafter waived the preliminary hearing.

In August of 2016, the circuit court held an adjudicatory hearing, during which the DHHR provided testimony concerning the child's injuries. According to the DHHR, petitioner's failure to obtain medical treatment for the child's serious injuries for several days indicated a lack of supervision in the home. The DHHR further stated that petitioner informed the agency that she was ordered by a court in another state to undergo anger management classes because of a prior domestic violence incident involving her ex-husband. Ultimately, the circuit court adjudicated petitioner of neglect due to her failure to supervise the children and her failure to timely seek medical treatment. That same month, petitioner filed a motion for a post-adjudicatory improvement period.

In September of 2016, the circuit court held a dispositional hearing, during which a service provider testified to petitioner's unwillingness to visit the children. Specifically, between May of 2016 and September 12, 2016, petitioner did not visit the children at all. In fact, when the provider attempted to arrange visitation, petitioner refused to acknowledge the question and accused the provider of "trying to set [her] up." During the visits petitioner did attend, the provider had to intervene frequently to tell petitioner to check the infant's diaper and to keep the children from playing with inappropriate items, such as electrical sockets and the sharp edge of cans brought to the visits as snacks for the children. According to the provider, petitioner had no control over the children.

In regard to services the DHHR offered to remedy the conditions of abuse and neglect, a service provider testified that petitioner had not been cooperative for over ten months. The DHHR attempted to locate petitioner on multiple occasions to provide services, but petitioner could not be located. Another DHHR employee testified to petitioner's inability to be located during the proceedings, as petitioner moved to various residences, some of which she shared with individuals with open Child Protective Services cases. Petitioner's parenting and adult life skills provider testified that petitioner missed over thirty classes and struggled with the materials. The provider specifically testified that petitioner would not consider "non-physical punishment techniques" because she saw nothing wrong with physical punishment for the children. The provider further testified to an incident in which petitioner yelled at her when the provider attempted to provide services, which prompted the DHHR to suspend those services for a period of time. According to the provider, petitioner failed to comply with services until September of 2016, the same month as the dispositional hearing. The provider also testified to concerns with petitioner's inability to properly parent the children. Finally, the circuit court heard testimony concerning regressions in the children's behavior following visits with petitioner. Ultimately, the circuit court terminated petitioner's parental rights.[2] It is from this order that petitioner appeals.

---

[2]According to the DHHR, the children's father voluntarily relinquished his parental rights during the proceedings. Petitioner's parental rights were terminated below. The children currently reside in a foster home. According to both the guardian and the DHHR, the

(continued . . . )

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

First, the Court finds no error in the circuit court's failure to rule on petitioner's motion for a post-adjudicatory improvement period because it was clear that termination of her parental rights was necessary. Pursuant to West Virginia Code § 49-4-610(2)(B), a circuit court may grant a parent a post-adjudicatory improvement period when "[t]he [parent] demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period . . . ." Here, the record is clear that petitioner could not satisfy this burden. While it is true that the circuit court heard testimony about petitioner's recent compliance with services, the overwhelming evidence below established petitioner's failure to comply with services throughout the majority of the proceedings. In fact, the circuit court specifically found that petitioner "continuously refused to cooperate with services provided by the" DHHR. As such, it is clear that petitioner's minimal compliance with services shortly before the dispositional hearing was insufficient to establish that she was likely to fully participate in a post-adjudicatory improvement period. Accordingly, we find no error in the circuit court's failure to grant petitioner the same.

Next, the Court finds no error in the circuit court's termination of petitioner's parental rights. On appeal, petitioner argues that the circuit court erred in imposing disposition because termination of her parental rights was not the least-restrictive dispositional alternative. Again, petitioner argues that she should have been entitled to an improvement period. We do not agree.

---

permanency plan for the children is adoption, either by the current foster family or recently identified relatives in the State of New York.

Based upon the evidence regarding petitioner's failure to comply with services offered and the persistence of the underlying conditions of abuse and neglect, including petitioner's failure to properly supervise the children, the circuit court found that there was no reasonable likelihood the conditions of abuse and neglect could be substantially corrected.

Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child . . . .

Based upon the evidence outlined above, including petitioner's willful refusal to participate in services until shortly before the dispositional hearing and the persistence of the conditions of abuse and neglect that necessitated the petition's filing, it is clear that the circuit court had sufficient evidence upon which to make this finding. The circuit court further found that termination of petitioner's parental rights was necessary for the children's welfare. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate a parent's parental rights upon such findings. Moreover, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). For these reasons, we find no error in the circuit court's termination of petitioner's parental rights.[3]

---

[3]In her brief, petitioner also mentions in passing under her argument section generally, but not in relation to any specific assignment of error, that she believes the circuit court "allowed its judgment to be clouded by the fact that the children would have a better life with the foster family . . . and used that in its decision to terminate [her] parental rights." Petitioner bases this argument entirely on the circuit court's finding in its dispositional order that "the children are receiving specialized foster care and are able to be together. This continuity of care is essential to these children." We have previously held as follows:

(continued . . . )

4

Finally, we find no error in the circuit court's denial of post-termination visitation. According to petitioner, the circuit court failed to consider the strong emotional bond between her and the children. In regard to post-termination visitation, we have held as follows:

> "When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W.Va. 79, 562 S.E.2d 147 (2002). There is no evidence in the record that the circuit court failed to consider petitioner's bond with her children. However, the record shows that the children experienced behavioral issues after visits with petitioner. In fact, one provider testified that D.N.-2 experienced regressions in his behavior after visitations with petitioner. According to this provider, visitations with petitioner caused D.N.-2 to believe he was going to be moved again, which prompted the child "to run to his bedroom to look around almost as if to check to see if his stuff is still there . . . ." Accordingly, it is clear that continued contact with petitioner would be detrimental to the children's wellbeing. As such, we find no error in the circuit court's denial of post-termination visitation.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 25, 2016, order is hereby affirmed.

Affirmed.

---

> "While courts always look to the best interests of the child in controversies concerning his or her custody, such custody should not be denied to a parent merely because some other person might possibly furnish the child a better home or better care." Syllabus point 3, *Hammack v. Wise*, 158 W.Va. 343, 211 S.E.2d 118 (1975).

Syl. Pt. 8, *In re Antonio R.A.*, 228 W.Va. 380, 719 S.E.2d 850 (2011) (citations omitted). The Court does not agree that the circuit court's inclusion of information regarding the children's current foster placement and its impact on their wellbeing constitutes an improper consideration of the foster family's ability to provide the children a better home than petitioner. On the contrary, the circuit court had ample evidence upon which to terminate petitioner's parental rights. As such, we find no error in this regard.

**ISSUED**:  June 9, 2017


**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker