# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**John W.,**
**Respondent Below, Petitioner**

**vs)  No. 19-0202**  (Kanawha County 17-D-56)

**Rechelle H.,**
**Petitioner Below, Respondent**

**FILED**

**January 13, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner John W. ("Father"), pro se, appeals the Circuit Court of Kanawha County's February 20, 2019, order denying his appeal of the family court's order with regard to the modification of his parenting time. Respondent Rechelle H. ("Mother"), by counsel Lyne Ranson and Brittany Ranson Stonestreet, filed a response in support of the circuit court's order. Father submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court and remanding with directions is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties were married on January 2, 2016, and separated on December 21, 2016. A child was conceived during the marriage and was born in July of 2017. A Final Divorce Order, Interim Parenting Plan and Notice of Modification Hearing was entered in the Family Court of Kanawha County on December 19, 2017. In that order, Mother was designated as the primary residential and custodial parent of the child, N.A.H. The interim parenting schedule provided that Father would exercise parenting time with the child every other Saturday, generally synchronized to Father's parenting schedule with the child's two half-siblings (from Father's prior marriage), and that Father's parenting time would occur in or around the Lewisburg/White Sulphur Springs, West Virginia, area where Mother relocated before the child was born and where she and the child now reside with Mother's mother.[1] A hearing was scheduled for March 22, 2018, "to address any

---

[1] The divorce order also ordered Father to pay Mother $1,034 per month in child support.

modifications or necessary changes to the parenting schedule."[2]

Hearings were thereafter conducted on March 22, 2018, September 5, 2018, and November 14, 2018, on Father's Notice of Live Birth of Child of Marriage, and Notice of Intention to Amend Birth Certificate of [N.A.H.] and Fourth Motion for Temporary Relief and Injunctive Relief, and also on Father's Motion to Reduce Child Support.

On October 24, 2018, following the September 5, 2018, hearing, the family court entered a revised interim order that modified Father's parenting schedule, awarding Father parenting time every other weekend, both Saturday and Sunday, in the Lewisburg/White Sulphur Springs area, and every other Wednesday afternoon in Kanawha County (where Father resides). The revised order provided that Mother would transport the minor child to and from Kanawha County for the Wednesday visits. The interim parenting schedule did not provide for overnight visits.[3]

The parties submitted reports from their respective expert psychologists, who also testified during the course of the hearings regarding whether overnight visits with Father were appropriate in light of the child's age and development. Mother's expert psychologist, Dr. Timothy Saar, testified, to a reasonable degree of psychological certainty, that, given Mother's role as the child's primary caretaker, overnight parenting time should not occur during the attachment stage in the child's development and that time away from her (as the primary caretaker) could potentially cause the child significant long-lasting harm. He further testified that the interim parenting schedule was working well and helping to establish a bond between the child and Father. Dr. Saar recommended that overnights should not be considered until the child was three years old.

Father's expert, Dr. Cliff Hudson, initially testified at the March 22, 2018, hearing, and generally agreed with Mother's expert, Dr. Saar, that overnights away from the primary attachment figure during such a young age could potentially be disruptive to the child's emotional and psychological well-being. Dr. Hudson testified that he firmly believed in "attachment theory" and in respecting the "primary attachment relationship." According to Dr. Hudson, overnights should begin closer to the age that a child's language is better developed (around twenty-four months) so that the child can understand when he would be leaving and then returning to his primary caretaker. Dr. Hudson opined that it was his "best recommendation" that Father have two overnights per

---

[2] Beginning with Mother's departure from the marital home after learning of her pregnancy, Father's appellate brief recounts, in great detail, the divorce proceedings, including Mother's refusal to resolve parenting and paternity issues even after the child's birth; Father's unsuccessful efforts to receive updates on Mother and child during the pregnancy; the birth of N.A.H. without Father's knowledge; Father's visits with the child beginning as soon after his birth as was permitted by Mother; and the impact of Mother's abrupt absence on the half-siblings.

[3] The revised order also temporarily suspended Father's monthly child support obligation based upon the costs incurred in connection with visiting the child approximately 120 miles away from Father's home, in compliance with the parenting schedule (i.e., gas, vehicle maintenance, hotel stays, and dining expenses for Father and the half-siblings).

week every other weekend to establish a healthy bond with the child.

During the next hearing, on September 5, 2018, Dr. Hudson expressed a modified opinion based upon several studies of which he had recently become aware ("the Warshak and Fabricius studies").[4] Dr. Hudson testified that, based upon these studies, he now believes that overnights for infants do not cause harm and that he no longer believes in the primary attachment figure theory. Dr. Hudson testified that a child may safely have multiple attachment figures. However, when asked on direct examination whether he recommended a 50/50 shared parenting schedule, Dr. Hudson testified that he did not recommend that it "be initiated with any sort of immediacy" but he was "prepared to recommend that it be a goal that is proceeded toward with some speed." Dr. Hudson opined that overnight visits should begin with a single overnight if the visits are going well and then increase the overnights from there. For his part, based upon the updated research, Dr. Saar subsequently modified his recommendation and opined that overnight visits with Father may be considered between the ages of eighteen and twenty-four months, but no sooner than eighteen months.

Mother and Father also testified before the family court. Mother testified that the child sleeps in a crib in her bedroom. She further testified that, after visits with Father, the child is very needy and anxious. Though she initially stated that she believed that overnight visits should not begin until the child is thirty-six months old, she later testified that overnights could begin when the child is twenty-four months old. Father testified that he and the half-siblings enjoy a loving relationship with the child and introduced videotape showing the interaction between them. He further testified that he wishes to exercise a 50/50 shared parenting schedule with the child and requested that the schedule be synchronized with the 50/50 schedule he enjoys with the child's half-siblings.

In its final order, the family court determined that it is in the child's best interest to have parenting time with Father as follows: at approximately twenty-two months old, "when the child's verbal language is better developed," Father would be given overnight visits (i.e., from Saturday at 10:00 a.m. to Sunday at 5:00 p.m.) on alternating weekends in Lewisburg for two months "to ensure that if the child suffers difficulties with the transition and separation anxiety, it will allow Mother to be involved and assist to facilitate parenting"[;] at twenty-four months old, the overnight parenting time will no longer be required to occur in Lewisburg; and at thirty-six months old, the child's parenting time with Father will be from Friday at 6:00 p.m. until Sunday at 6:00 p.m., on alternating weekends. The every other Wednesday visits remained unchanged. The parenting schedule further provided a holiday schedule and, relevant to this appeal, ordered that the child

---

[4] *See* Warshak et al*., Social Science and Parenting Plans for Young Children: A Consensus Report*, 20 J. Psych. Pub. Pol. & Law 46 (2014); Warshak, *Stemming the Tide of Misinformation: International Consensus on Shared Parenting and Overnighting*, 30 J. Am. Academy of Matrimonial Law. 177 (2017); Fabricius and Suh, *Should Infants and Toddlers Have Frequent Overnight Parenting Time With Fathers: The Policy Debate and New Data*, 23 J. Psych. Pub. Pol. & Law 68 (2017).

spend Easter with Mother on odd years and with Father on even years.[5] Father appealed this order to the circuit court.

In its Order Denying Petition for Appeal, entered on February 20, 2019, the circuit court affirmed the family court's order. This appeal followed.

This Court reviews the circuit court's order under the following standard:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo.*

Syllabus, *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004). Furthermore, "[q]uestions relating to . . . custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syllabus, *Nichols v. Nichols*, 160 W. Va. 514, 236 S.E.2d 36 (1977).

In his first assignment of error, Father argues that the family court erred in failing to order a 50/50 shared parenting plan. Father argues that the consensus scientific view, as demonstrated by the studies referenced above, is that a young child's best interest is met by such a plan and that other research (upon which he extensively relied in his brief) is in accord.[6]

We find no error. It is well settled that "'[a]lthough parents have substantial rights that must be protected, the primary goal . . . in all family law matters . . . must be the health and welfare of the children.' Syl. Pt. 3, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996)." Syl. Pt. 7, *Tevya W. v. Elias Trad V.*, 227 W. Va. 618, 712 S.E.2d 786 (2011). Indeed, "'[i]n visitation as well as custody matters, we have traditionally held paramount the best interests of the child.' Syl. Pt. 5, *Carter v. Carter,* 196 W.Va. 239, 470 S.E.2d 193 (1996)." *Tevya W.*, 227 W. Va. at 620, 712 S.E.2d at 788, syl. pt. 5. Aside from Father's desire to equally share parenting time with Mother, the evidence, at the time of the family court hearings below, did not demonstrate that such a plan was in the best interests of the child. The family court found that the child becomes "clingy, needy, distant, anxious[,] and[,] the next day[,] completely exhausted" after visits with Father. Father's expert, Dr. Hudson, testified that he was aware of Father's desire to have equal parenting time with the child, who was then approximately fifteen months old. However, despite his acknowledgement of the recent scientific consensus view that a young child may safely have multiple attachment figures and that overnight visits would not be harmful, Dr. Hudson did not recommend that an

---

[5] The family court also ordered Father to pay Mother child support in the amount of $440 per month beginning on November 1, 2018.

[6] On July 19, 2019, pursuant to Rule 6(b) of the West Virginia Rules of Appellate Procedure, Mother filed a motion to strike that portion of Father's brief that referenced and extensively relied on "'psychological' research" that was neither presented to nor considered by either the family court or circuit court below. By order entered on September 5, 2019, a majority of this Court refused the motion to strike.

equal shared parenting schedule "be initiated with any sort of immediacy." Both he and Dr. Saar opined that overnight visits with Father could soon safely begin, and, indeed, the family court ordered that overnight visits begin when the child turned twenty-two months old (May 2019). The family court's order that directed the phasing-in of overnight parenting time with Father—at present, Saturday at 10:00 a.m. to Sunday at 5:00 p.m.—is consistent with the experts' recommendations. The family court determined that this schedule, based upon all of the evidence, is in the child's best interests, and we conclude that Father failed to show that the court's refusal to award a 50/50 shared parenting plan was an abuse of its discretion.

Next, we address Father's argument that the parenting plan that was ordered by the family court failed to properly take into account the child's relationship with his half-siblings. Father argues that this Court has recognized the importance of maintaining sibling connections, that such connections are in the siblings' best interests, and that the parenting plan at issue contravenes West Virginia law. *See* W. Va. Code § 48-9-206(a)(3) (providing, in relevant part, that "the court shall allocate custodial responsibility so that . . . the custodial time the child spends with each parent may be expected to achieve [the objective of] . . . keep[ing] siblings together when the court finds that doing so is necessary to their welfare[.]").[7] *See also Skidmore v. Rogers*, 229 W. Va. 13, 22, 725 S.E.2d 182,191 (2011) (stating that "the laws of this State recognize, in a variety of areas, the importance of sibling bonds and encouraging sibling contact"). Father further argues that he should be given the same parenting schedule that he enjoys with his other children (i.e., a 50/50 shared parenting schedule). According to Father, the half-siblings and the child are suffering a hardship by not spending extended time together. Finally, Father argues that the family court's order makes only passing reference to the half-siblings, which is in contravention of West Virginia law.

We find no error. While "keep[ing] siblings together when the court finds that doing so is necessary to their welfare," W. Va. Code § 48-9-206(a)(3), in relevant part, is an objective in determining allocation of custodial responsibility, so too is "consider[ation] [of] the stage of [the] child's development[.]" W. Va. Code § 48-9-206(a)(8), in relevant part. Indeed, as evidenced by the expert testimony presented by both parties, the key focus in determining the appropriate parenting schedule in this case was the child's tender age and stage of development. As previously established, in ordering the phasing-in of overnight visits with Father, the family court properly considered the best interest of the child at issue (and not the half-siblings), which is the overarching objective in allocating the custodial and decision-making responsibilities between parents who do not live together. *See* W. Va. Code §§ 48-9-101 and -102(a). Accordingly, we conclude that the family court did not abuse its discretion in failing to consider the best interests of the half-siblings in ordering the parenting schedule.[8]

---

[7] During the course of the proceedings below, Father moved to intervene on behalf of the half-siblings. Father later withdrew his motion.

[8] Although the family court's interim order ordered that Father's weekend parenting schedule with the child be generally synchronized to the parenting schedule he enjoys with the half-siblings, the final order is silent in this regard. Mother's brief states that the omission of this specific language in the family court order is harmless error because

We next address Father's argument that the family court's order violated his fundamental right as the child's natural parent. Father argues that, in syllabus point 1 of *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973), this Court recognized that,

> [i]n the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions.

*See also* Syl. Pt. 2, *Hammack v. Wise*, 158 W. Va. 343, 211 S.E.2d 118 (1975) ("'A parent has the natural right to the custody of his or her infant child and, . . . the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts.' Syllabus, *State ex rel. Kiger v. Hancock*, 153 W. Va. 404, 168 S.E.2d 798 (1969)."). Father argues that fathers must be recognized as parents who are as equally capable as mothers in caring for their children, and that, in denying his request for equal shared parenting time, the family court improperly relied on Mother's maternal status and her desire that the request be denied. According to Father, he has proven himself to be a capable parent based upon the equal shared parenting schedule he has enjoyed for more than four years with the child's half-siblings and his demonstrated ability to care for the child during his independent parenting time with him.

We find no error. The parenting schedule awarded by the family court does not violate Father's fundamental right as a parent. As previously established, the phasing-in of overnight parenting time with the child, as ordered by the family court, has been deemed to be in the child's best interests given his tender age, stage of development, and Mother's role as his primary caretaker and attachment figure. The family court's order does not state, either expressly or by inference, that the parenting schedule was based upon traditional gender roles. As we have previously stated, "[s]uperior to any rights of parents to the custody of their own children . . . is the overriding consideration of the child's best interests. Thus, the natural right of parents to the custody of their children is always tempered with the courts' overriding concern for the well-being of the children involved." *Kessel v. Leavitt*, 204 W. Va. 95, 174, 511 S.E.2d 720, 799 (1998). Finally, to the extent Father argues that he has an automatic right to equal shared parenting by virtue of his status as a natural parent, that argument is unsupported in the law. Accordingly, we find that Father's argument that the family court's order violated his fundamental right as a parent is without merit.

---

> "[t]he parties have been operating under an alternating weekend . . . schedule since the hearing on October 12, 2017[,] and it has primarily coincided with the alternating weekends [the child's] siblings are with Father. There is simply no need to further clarify what the parties were already doing and interpreted the order to require."

Notwithstanding the parties' present willingness to synchronize Father's parenting schedules, this Court believes that it is prudent to require that a corrected family court order be entered to expressly include this requirement.

6

Next, Father argues that certain findings made by the family court were clearly erroneous as they were not supported by the evidence. Suffice it to say, Father, without discussing each particular finding so as not to "regurgitate Mother's baseless claims[,]"[9] contends that he "categorically denied Mother's characterizations" of certain evidence during the proceedings below and, on appeal, reiterates his explanations and justifications for behavior that was the subject of unfavorable and particularly unflattering findings by the family court. In response, Mother's brief on appeal references specific portions of the record that support the family court's findings, either expressly or by inference. Indeed, the circuit court, in its February 20, 2019, order denying Father's petition for appeal from the family court order, addressed each of the findings about which Father complains and determined, based upon the evidence, that they were not clearly wrong.

This Court "review[s] the findings of fact made by the family court judge under the clearly erroneous standard[.]" *Carr*, 216 W. Va. at 475, 607 S.E.2d at 804, syl., in part. We have explained that

> "[u]nder the clearly erroneous standard, if the findings of fact and the inferences drawn by a family [court judge] are supported by substantial evidence, such findings and inferences may not be overturned even if a circuit court may be inclined to make different findings or draw contrary inferences." Syl. Pt. 3, *Stephen L.H. v. Sherry L.H.,* 195 W.Va. 384, 465 S.E.2d 841 (1995).

Syl. Pt. 2, *Warren v. Garland*, 235 W. Va. 115, 772 S.E.2d 214 (2015). Likewise, "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.,* 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). *See also Martin v. Randolph Cty. Bd. of Educ.*, 195 W. Va. 297, 306, 465 S.E.2d 399, 408 (1995) ("We cannot overlook the role that credibility places in factual determinations, a matter reserved exclusively for the trier of fact."). Though Father disagrees with the family court's interpretation of certain evidence, and the inferences drawn therefrom, we cannot conclude that the family court's findings were clearly wrong.

Father next argues that the parenting schedule ordered by the family court improperly rewarded Mother's pattern of alienating Father from the child, in violation of West Virginia Code §§ 48-9-206(a)(1) and (9) (2018). West Virginia Code §§ 48-9-206(a)(1) and (9) state, in relevant part, as follows:

> (a) [T]he court shall allocate custodial responsibility so that . . . the custodial time the child spends with each parent may be expected to achieve any of the following objectives:

---

[9] Father challenges findings of fact 4, 5, 6, 7, 9, 11, and 16.c.iii in the family court's December 4, 2018, order.

(1) To permit the child to have a meaningful relationship with each parent who has performed a reasonable share of parenting functions;

. . .

(9) To consider which parent will encourage and accept a positive relationship between the child and the other parent, including which parent is more likely to keep the other parent involved in the child's life and activities.

Father argues that Mother abandoned Father and his children (the child's half-siblings) immediately after learning of her pregnancy, tried to obtain a divorce before the child's birth, refused to keep Father informed about the pregnancy, moved to a location two hours away a few weeks before the child's birth, refused to inform Father of the birth until the child was four days old, and refused to initially identify Father as such in hospital records.[10] According to Father, he has been deprived of 7.5 days of parenting time since the implementation of the interim parenting schedule, which Mother refuses to discuss or allow Father to make up. Father contends that Mother persistently attempted to preclude meaningful parenting time between him and the child, *see* W. Va. Code § 48-9-209(a)(4) (providing, in relevant part, that "the court shall determine whether a parent who would otherwise be allocated responsibility under a parenting plan: . . . [h]as interfered persistently with the other parent's access to the child"), and that the family court improperly rewarded these efforts.[11]

We disagree. The family court found that Mother did not attempt to preclude a relationship between Father and the child. To the contrary, noting that although, "[t]he child suffers from separation anxiety[,]" the family court found that "Mother is trying to facilitate the father[-]son relationship in the best and easiest way possible for the minor child, so he maintains his sense of security and safety while encouraging Father's relationship." The family court further found that Mother "has worked on the exchanges of the minor child to make the transition easier on him. She

---

[10] Additionally, Father argues that Mother gave the child her maiden surname without consulting with him first. Father's petition to change the child's surname was denied by the circuit court. This Court affirmed. *See John W. v. Rechelle H.*, No. 18-0329, 2019 WL 2168795 (W. Va. May 20, 2019) (memorandum decision). Father's petition for rehearing was refused by order entered on September 5, 2019.

[11] The parties disagree as to whether West Virginia Code § 48-9-206(a)(9) (2018) is applicable to this case because it became effective on June 8, 2018, during the course of these proceedings. Because the amended statute became effective after the divorce petition was filed and the initial March 22, 2018, hearing was conducted, Mother contends that it does not apply because "[a] statute is presumed to operate prospectively unless the intent that it shall operate retroactively is clearly expressed by its terms or is necessarily implied from the language of the statute." Syl. Pt. 3, *Shanholtz v. Monongahela Power Co.*, 165 W. Va. 305, 270 S.E.2d 178 (1980). This Court need not resolve this issue because, even if the amended version of the statute is applied, we find no error in the family court's findings regarding Mother's conduct, which the Court found to be appropriate under the circumstances. *See infra.*

8

waits outside for Father so that [the] child does not have to be taken from her arms to Father's." According to the family court's findings,

> [i]n no way is Mother trying to alienate the minor child from Father. Her main concern is the child's best interest and not the convenience of Father. She wants the baby to feel secure and protect him as long as she can before overnight parenting occurs. She wants Father to be familiar to the minor child and have a fun, loving experience, not a dreaded experience with Father.

Finally, the family court found that Father testified that "Mother was agreeable during the divorce process for Father to exercise parenting time with the minor child every other weekend on Saturday and Sunday, with no overnights." Importantly, Father does not dispute any of these findings, which we conclude were not clearly wrong.

Lastly, Father argues that the family court order failed to include any protocol for Easter observances and further failed to include "the mutual parental non-interference in faith life language" that was previously agreed upon by the parties. These arguments are without merit. First, the family court order, in fact, provided that the child would spend Easter with Mother in "odd years" and with Father in "even years." Second, Father failed to raise the latter argument in his appeal of the family court order to the circuit court. "Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered." *Fruth v. Powers*, 239 W. Va. 809, 815, 806 S.E.2d 465, 471 (2017).[12]

For the foregoing reasons, we affirm and remand for entry of a corrected order consistent with this memorandum decision. *See* n.8.

Affirmed and remanded, with directions.

**ISSUED:** January 13, 2020

---

[12] Father also declares in his brief that the family court ratified Mother's proposed final order "less than twenty-four hours after the parties' submittals of proposed findings and conclusions[,]" and, further, that the circuit court "simply rubber-stamped the [f]amily [c]ourt's order without [a] hearing and contrary to controlling precedent on findings requirements." Father contends that, as a result, he was denied due process and his constitutional rights as a parent have been "unlawfully injured." Father's brief has failed to present any legal authority to support this alleged error or to otherwise develop this argument on appeal. We have made clear that "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim[.]" *State, Dep't of Health v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995) (internal quotation marks and citations omitted). We, therefore, decline to address this inadequately briefed issue on the merits. *See State v. Lambert*, 236 W. Va. 80, 100, 777 S.E.2d 649, 669 (2015); *State v. Trail*, 236 W. Va. 167, 179 n.15, 778 S.E.2d 616, 628 n.15 (2015).

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison