300 S.E.2d 104

**Lynn McKee HATFIELD**

v.

**Jenny Lou Pope HATFIELD (Cole)**

**No. 15566.**

Supreme Court of Appeals of
West Virginia.

Jan. 27, 1983.

Leo Catsonis, Charleston, for appellant.

H. Truman Chafin, Williamson, for appellee.

PER CURIAM:

Jenny Lou Pope Hatfield Cole appeals from the November 17, 1981 order of the Mingo County Circuit Court, which modified her divorce decree by granting custody of her minor child to her mother. Finding that the trial court improperly awarded

custody to the grandmother instead of the natural father, we reverse and remand the case to the circuit court.

Appellant and the appellee, Lynn McKee Hatfield, were divorced by order entered July 2, 1979. The divorce decree granted appellant custody of their son, Jared, who was then four years old, and ordered the appellee to pay $200 per month child support. On October 5, 1981, the appellee filed a petition requesting that the custody of Jared be changed to him, and that he be released from further payment of child support. The petition alleged, *inter alia:*

"5. That defendant-respondent does not maintain a suitable and proper home for the infant child of the parties hereto, and, in fact, said infant child is residing with his maternal grandmother and has done so since the entry of the aforesaid divorce decree; that defendant-respondent has remarried and no longer provides the care and nourishment needed by said infant child; that the best interest of said infant child is not being promoted by defendant-respondent.

"6. That petitioner is in a better position to care for said infant child; that said infant child is cared for during the time that petitioner is at work by his maternal grandmother and said maternal grandmother will continue to care for said infant child during the time that petitioner is at work.

"7. Pursuant to 48–2–15 of the West Virginia Code, as amended, your petitioner states that altered circumstances have occurred and taken place since the rendition of the original divorce decree which now render it necessary that this court change the custody of said infant child by placing him in the custody of your petitioner herein."

A hearing was held on November 12, 1981. The testimony showed that after the divorce, the appellant and her young son had gone to live with her mother, Mrs. Nell Pope. When the appellant moved out some three months later to seek work, she left Jared with Mrs. Pope, who continued to care for him for two and a half years. Appellant worked at a number of jobs, in Williamson and later Huntington, but was unable to keep her son with her. She visited him in her mother's home two to four times a month until the last year, when her visits became more infrequent.

The appellee natural father lives about five miles from Mrs. Pope. He visited with Jared every day, and kept him on weekends without any objection from the appellant. He helped with his son's care, bought him clothes, took care of his medical needs, helped him with homework, and took him places. Appellee worked as a mine foreman, making $3,600 per month; from this he paid appellant $150 alimony and $200 child support monthly. Appellee said that he wanted custody of Jared, but admitted that he wanted Mrs. Pope actually to care for the boy, in much the same manner as she had been doing previously. Appellee has not remarried.

The evidence showed that the appellee has a good relationship with the appellant's family, and that they supported him in this action. Mrs. Pope and her two sons, the appellant's brothers, testified that the appellant had never taken responsibility for Jared, and that the child would be better off in the custody of his father, if Mrs. Pope could continue to care for him. Testimony showed that none of the child support checks went towards Jared's care; they were used to make payments on appellant's new car. Mrs. Pope stated that appellant was welcome to stay in her home, rent-free, and that there was no financial reason for her to move out.

After the appellant remarried in May of 1981, the appellee began sending the child support checks to Mrs. Pope. The appellant objected, but Mrs. Pope refused to give the checks to her. When the appellant tried to take her son with her in September, Mrs. Pope resisted. Appellant regained custody of her son in October, 1981 and instituted habeas corpus proceedings which resulted in an award of custody to her, until further hearing. The appellee, Mrs. Pope, and one of the appellant's brothers testified they believed the only reason appellant sought to regain custody of Jared was to get the support checks.

On November 17, 1981, the judge announced his decision to give custody of the child to his maternal grandmother, Mrs. Pope. In considering the question of whether the appellant was fit, the judge noted that she had left her child with his grandmother two and a half years ago. The judge held that by leaving the boy with Mrs. Pope, the appellant delegated to her mother the position of standing *in loco parentis* to the child, and as such Mrs. Pope was entitled to be on equal footing with the parents in determining to whom custody is to be awarded.

Although the judge did not specifically state that either of the parents was unfit, he did find that neither of them had been the actual custodian or primary caretaker of the child, but had authorized the grandmother to be. In addition, they both indicated that she was doing a commendable job. The trial court found it to be in the best interest of the child to let him remain in the custody of his grandmother, and awarded custody to Mrs. Pope, by an order entered the same day. The order contained the following findings of fact and conclusions of law:

"1. This Court doth find under the evidence herein presented, that Jenny Lou Cole, the natural mother herein, because of her misconduct, neglect, and abandonment has waived and relinquished her right to custody of the infant child herein, namely, Jared Lynn Hatfield, age 6, and the Court doth modify paragraph 1 of the original divorce decree entered herein by the Logan County Circuit Court, and place the care, custody and control of the said infant child, pursuant to 48-2-15 of the West Virginia Code, as amended, with Nell Pope, the maternal grandmother, where said infant child has resided for the last two and one-half years.

"2. The Court doth further find from the evidence that the natural mother has permanently transferred and relinquished her right to custody of said infant child and under the evidence presented herein conclusively finds that the welfare and best interest of said infant child will be vastly promoted by

directing that the child be forthwith returned to the care, custody and control of his said grandmother, Nell Pope, and that the divorce decree is modified in this regard; the divorce decree is further modified by directing plaintiff, Lynn McKee Hatfield, to pay unto the natural grandmother, Nell Pope, the sum of $200.00 per month for the support and maintenance of the said infant child which will continue until further order of this Court."

The appellant contends that the trial court: (1) erred in awarding custody to the grandmother, who was not a party to the proceeding; (2) was clearly wrong, and applied incorrect standards of law in finding that appellant had transferred custody to the grandmother; and (3) made inadequate findings based on inadmissible and controverted evidence, which did not support the allegations of the petition. We agree that the trial court erred, but for reasons unrelated to these contentions.

■ It is well established in this jurisdiction that:

"A parent has the natural right to the custody of his or her infant child and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment, or other dereliction of duty, or has waived such right, or by agreement or otherwise has permanently transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts."

Syl. pt. 2, *Hammack v. Wise*, 158 W.Va. 343, 211 S.E.2d 118 (1975), *quoting*, syllabus, *State ex rel. Kiger v. Hancock*, 153 W.Va. 404, 168 S.E.2d 798 (1969). In *Leach v. Bright*, 165 W.Va. 636, 270 S.E.2d 793 (1980), we held that this principle was controlling in a case where the mother sought custody from the father, but the child had at all times been in the actual physical custody of the paternal grandparents.

■ The trial judge in the instant case recognized that *Leach v. Bright, supra,* stated the applicable law, but said that

custody could nevertheless be awarded to a grandparent, if the parent or parents are unfit to be custodians. The trial judge found that the appellant was unfit, in that she had abandoned her child. We cannot say that he was clearly wrong in so finding. However, he did not find the appellee to be unfit to have custody of his son. Therefore, it was an abuse of discretion not to award custody of Jared to the appellee, his natural father, who filed the petition.

"Although the exercise of discretion by a trial court in awarding custody of a child will not ordinarily be disturbed, when it clearly appears that such discretion has been abused, the decision awarding custody will be reversed."

Syl. pt. 4, *Hammack v. Wise*, 158 W.Va. 343, 211 S.E.2d 118 (1975).

In the case before us it is obvious that, as between the parents, the father had become the primary parental influence on the child: he saw Jared on a daily basis, helped him with homework, took him on weekends, and had been providing the type of emotional support and parental guidance that all children need. The mother, on the other hand, had little contact with the child during the year immediately before this hearing. Accordingly, there had been a significant change in circumstances since the original award of custody to the mother.

While it is true that the grandmother, Mrs. Pope, performed more caretaking functions than the father, the two of them constituted a team that had been responsible for the child for nearly two and a half years before the hearing. Although the mother was originally given custody, she voluntarily relinquished that custody to the grandmother. It is now she, and not the father, who seeks to dissolve the child's strong emotional bonds and remove him from his secure, accustomed surroundings.

Since the father represented to the court below that he would continue to have the child reside with Mrs. Pope, thus causing no disruption to the child's routine and sense of security, it would have been appropriate to award custody to the father with the understanding that if the child

were removed from his grandmother's home, such an action would constitute another change in circumstances warranting a review of the child's custody.

Accordingly, the judgment of the Circuit Court of Mingo County is reversed and the case is remanded with directions to award custody to the father, subject to the considerations stated herein.

Reversed and remanded.