342 S.E.2d 201

**George Stephen ROZAS**

v.

**Cheryl L. ROZAS.**

**No. 16644.**

Supreme Court of Appeals of West Virginia.

March 25, 1986.

---

William C. Garrett, Garrett, Garrett & Nostrand, Webster Springs, for appellant.

William W. Talbott, Talbott & Alsop, Webster Springs, for appellee.

NEELY, Justice:

This is an appeal from the Circuit Court of Webster County's 5 August 1983 order returning Elizabeth May Rozas to the custody of her mother Cheryl Rozas. Today, we address two issues: (1) whether the circuit court's custody order is supported by the weight of the evidence; and, (2) whether the circuit court erred by refusing to make the report of a 7 July 1983 psychological examination of Cheryl Rozas available for the litigants' inspection. Because the trial court erred in both of these respects, we reverse.

## I

On 16 November 1982 twelve-month-old Elizabeth May Rozas underwent a mastoidectomy at the West Virginia University Hospital. Following the operation, Elizabeth had a one-inch incision behind her left ear to allow for proper drainage. To protect her ears from infection, they were dressed and bandaged. During the days following the surgery, the dressing around Elizabeth's ears repeatedly fell off and the incision bled recurrently. Furthermore, the incision widened from one to two inches and "[t]wo vertical scratches, one in front and one behind" her left ear appeared on 2 December 1982. These events had no explanation, but a review of the hospital's nursing notes and staff progress notes revealed that at each bleeding incident Mrs. Rozas was alone with, or in the vicinity of, the child.

Concerned for his child's safety, on 9 December 1982 George Stephen Rozas, Cheryl L. Rozas' ex-husband, petitioned the circuit court to remove custody of the child from Cheryl Rozas. On 10 December 1982, Mr. Rozas obtained a temporary custody order that barred Cheryl Rozas from visiting Elizabeth. Subsequently, the wound healed quickly and there were no more bleeding episodes.

Pending the hearing on Mr. Rozas' petition, the circuit court transferred temporary custody of the child to the Department of Welfare. After an evidentiary hearing, on 5 August 1983 the circuit court held that George Rozas had, by a preponderance of the evidence, established that Cheryl Rozas physically abused Elizabeth while the child was a patient in the West Virginia University Hospital from 15 November 1982 through 12 December 1982. However, the court made no finding as to Cheryl Rozas' fitness as a mother. Furthermore, the circuit court concluded that it would be in the best interests of Elizabeth May Rozas for the court to return her to the custody of Cheryl Rozas provided that they both lived in the home of Cheryl Rozas' parents, Jessie and Fannie Woods.

From the events that took place at the hospital, the trial court concluded that Mrs. Rozas physically abused her child in a manner that posed a significant risk to the child's health and welfare. Our reversal of this case is required because we find it difficult not to conclude that the court was in error when it failed to find Mrs. Rozas an unfit parent. The physical abuse that Mrs. Rozas visited upon her child is a *prima facie*, although not conclusive, case of parental misconduct. Such misconduct would serve as grounds for a transfer of custody. Syl., *State ex rel. Kiger v. Hancock*, 153 W.Va. 404, 168 S.E.2d 798 (1969). Accordingly, the first question that the trial court must answer on remand is whether Cheryl Rozas is a fit parent. The circuit court may have believed that although there were isolated instances of child abuse arising from the stressful circumstances under which Mrs. Rozas was living as a result of the deterioration of her marriage, she is now a fit parent because her abusive behavior is unlikely to recur. Our problem in this case, however, is that the circuit court's findings of fact and conclusions of law come to us as final pronouncements rather than as explanations. And the circuit court has not forwarded a transcript of the proceedings below. On the basis of the record we have received, we cannot make a determination of Mrs. Rozas' fitness.

The trial court held that there was no evidence that Mr. Rozas is an unfit parent. Absent a showing that a natural parent is unfit, a natural parent's right to custody outstrips that of a grandparent. *Hatfield v. Hatfield*, 171 W.Va. 463, 300 S.E.2d 104 (1983); *Leach v. Bright*, 165 W.Va. 636, 270 S.E.2d 793 (1980). If Mrs. Rozas is unfit, the hybrid arrangement the trial court devised where Mrs. Rozas has custody so long as both she and the child reside with Mrs. Rozas' parents cannot stand. The courts cannot use the best interest of the child doctrine to strip a *fit* natural parent of his child. Syl. Pt. 3, *Hammack v. Wise*, 158 W.Va. 343, 211 S.E.2d 118 (1975); *Leach v. Bright*, 165 W.Va. 636, 270 S.E.2d 793 (1980) (award of nominal custody to fit parent improper if it has the practical effect of placing care and

control in the grandparents while denying it to the other fit parent).

 Because there is nothing in the record to suggest that Mr. Rozas' fitness as a parent was extensively examined below, on remand the trial court must make an evaluation of his fitness. If at the end of the proceedings, the evidence shows that one parent is fit, and the other parent unfit, the trial court must award the child to the fit parent. However, if the trial court finds that both parents are fit, the trial court may apply the "primary caretaker parent" rule, *Garska v. McCoy*, 167 W.Va. 59, 278 S.E.2d 357 (1981), or if there is no primary caretaker, examine the best interests of the child. In such an examination, the trial court may consider the affect that the child's respective sets of grandparents will have on the child's future should custody be awarded to one parent or the other.

## II

The trial court made an additional finding of fact that Webster County Mental Health's 7 July 1983 examination of Cheryl Rozas should not be made part of the record. George Rozas contends that the trial court erred by refusing to admit the report into evidence, by refusing to allow him to cross-examine the report's preparer, and by refusing to make the report available for his inspection.

## A

The court ordered the examination of Mrs. Rozas pursuant to *W.Va. Code*, 49–6–4(a) [1984], which states in pertinent part:

At any time during proceedings under this article the court may, upon its own motion or upon motion of the child or other parties, *order the child or other parties to be examined by a physician, psychologist or psychiatrist, and may require testimony from such expert,*

subject to cross-examination and the rules of evidence: ...

*W.Va. Code*, 49–6–4(a) [1984] leaves no doubt that despite the less formal evidentiary rules and practices in child custody cases, all psychiatric or psychological evidence shall be heard in open court and comport with all the requirements of due process.

It has long been established that if the trial court wishes to use the report of an independent investigator in making a decision in a child custody case, all parties to the proceeding will be afforded the opportunity to cross-examine of the report's preparer. *Rohrbaugh v. Rohrbaugh*, 136 W.Va. 708, 715, 68 S.E.2d 361, 366 (1951), *overruled on other grounds, J.B. v. A.B.*, 161 W.Va. 332, 242 S.E.2d 248 (1978).[1] The present case differs, however, because the trial court ruled that the report not be made part of the record.

 If an expert's report is not introduced into evidence, there is no right to cross-examine the report's preparer in open court. *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867, 870 (1981) (State Department of Welfare's decision not to call social workers to testify at hearing on neglect petition, or to offer their reports into evidence, did not violate mother's statutory right to cross-examine witnesses where mother was afforded, and exercised her opportunity to cross-examine each witness presented by the State). This rule does not change when the party who proffers the report is a court appointed, independent agency rather than a litigant.

 A trial court may exclude a report prepared pursuant to *W.Va. Code* 49–6–4(a) [1984] from the record because the court believes that the report is not competent, relevant, or probative. Even though a court appointed independent agency proffers the report, the report must meet the standards of the *West Virginia Rules of Evidence*.[2] In the present case, it was

---

1. *See also*, Annot. 59 A.L.R.3d 1337, § 3 (1973).

2. This Court adopted the *West Virginia Rules of Evidence* on 1 February 1985. Accordingly, the rules were not in effect at the time of the proceedings below. But because the rules will gov-

ern this case on remand, we have stated our holding in this case in the phraseology of the rules rather than the common law. We note, however, that the rules we interpret in this opinion are generally consistent with the com-

within the trial court's discretion to exclude the report. After administering a battery of psychological tests to Mrs. Rozas, Phyllis M. Maher of Webster County Mental Health, the report's preparer, concluded that: "... the psychological tests indicate results of questionable validity." She added: "... I do not feel I can make an accurate assessment of her capabilities as a mother." Phyllis Maher had great doubts about the usefulness of the report.

 *W.Va.R.Evid.* 702 provides for the admission of expert testimony, such as Ms. Maher's, when the expert's "knowledge will assist the trier of fact ... to determine a fact in issue." It does not require the admission of all proffered expert testimony. Under *Fed.R.Evid.* 702, (which is identical to *W.Va.R.Evid.* 702), the trial judge has broad discretion to decide whether expert testimony should be admitted, and where the evidence is unnecessary, cumulative, confusing or misleading the trial judge may properly refuse to admit it. *U.S. v. Portsmouth Paving Corp.*, 694 F.2d 312 (4th Cir.1982) (in a Sherman Act prosecution of a paving company, expert testimony that did little more than correlate higher contracting costs with longer hauling distances was excludable at the trial judge's discretion), *citing, Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962). Furthermore, the U.S. Supreme Court has recognized that "the trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and his action is to be sustained unless manifestly erroneous", *Salem v. United States Lines Co.*, 370 U.S. at 35, 82 S.Ct. at 1122, *cited in*, 3 *Weinstein's Evidence* ¶ 702[02] (1985). We follow our federal brethren and conclude that the circuit court judge did not abuse his discretion.

mon law, and to the extent that the common law differs, it is so modified.

**3.** *Fed.R.Evid.* 403 advisory committee note which states:

The case law recognizes that certain circumstances call for the exclusion of evidence which is of unquestioned relevance. These circumstances entail risks which range all the

. By its own admission, the report on Mrs. Rozas was of questionable validity. It was well within the trial court's discretion to decide that an extended cross examination of the report in open court would be unnecessary. Given the report's low probative value, and the substantial danger that it would serve only to confuse the issues, the report was properly excluded. *W.Va. R.Evid.* 403;[3] *United States v. Wright,* 489 F.2d 1181, 1186 (D.C.Cir.1973). In the present case, the probative value of the report is so low, we can find no reason to disturb the trial court's ruling.

**B**

 But even though a trial judge may exclude a court appointed expert's testimony or opinion from the record, he may not abrogate each party's right to inspect the court appointed expert's findings. *West Va.R. of Evid.* 706 states:

(a) *Appointment*—The court may on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed and may request the parties to submit nominations. The court may appoint any expert witnesses agreed upon by the parties and may appoint expert witnesses of its own selection. An expert witness shall not be appointed by the court unless he consents to act. *A witness so appointed shall be informed of his duties by the court in writing, a copy of which shall be filed with the clerk, or at a conference in which the parties shall have opportunity to participate. A witness so appointed shall advise the parties of his findings, if any; his deposition may be taken by any party; and he may be called to testify by the court or any party.* He shall be subject to cross-examination by each party, includ-

way from inducing decision on a purely emotional basis, at one extreme, to nothing more harmful than merely wasting time, at the other extreme. *Situations in this area call for balancing the probative value of the need for the evidence against the harm likely to result from its admission.* [Emphasis supplied by the Court].

ing a party calling him as a witness. [Emphasis supplied by the Court].

The parties to an action where the court has appointed an expert retain all their discovery rights in the expert's report.[4] Mr. Rozas had a right to inspect Ms. Maher's findings. Although Mr. Rozas may not be able to introduce Ms. Maher's findings into the record, he retains this limited right of review.

Accordingly, the judgment of the circuit court is reversed and the case is remanded for further proceedings consistent with this opinion. On remand the trial court will make Ms. Maher's report available to both parties.

Reversed and remanded.