447 S.E.2d 883

**Terry DANCY, Petitioner
Below, Appellant,**

v.

**Betty DANCY, Respondent
Below, Appellee.**

No. 22021.

Supreme Court of Appeals of
West Virginia.

Submitted May 11, 1994.

Decided July 19, 1994.

Lena S. Hill, Pineville, for appellant.

G. Todd Houch, Moler, Staton, Staton & Houck, Mullens, for appellee.

PER CURIAM:

Terry Dancy appeals the decision of the Circuit Court of Wyoming County denying him permanent custody of his eleven year old daughter, Tara. Mr. Dancy, who obtained temporary custody of his daughter after the Department of Health and Human Services (hereinafter, the Department) filed a petition alleging that Betty Dancy, his former wife and Tara's mother, was unable properly to supervise the child, maintains that it would be in Tara's best interests to remain in his custody. Mrs. Dancy, who complied with the Department's service plan, maintains that because she ameliorated the conditions that led to the Department's petition, she should regain custody of her daughter. Because the circuit court did not abuse his discretion in awarding custody of the child to Mrs. Dancy, we affirm the circuit court.

In 1986, Mr. and Mrs. Dancy were divorced and Mrs. Dancy was awarded custody of Tara. After her parents' divorce, Tara lived with her mother and her half-sister in Wayne County and had liberal visitation with her father. While in her mother's custody Tara did well in school, but she was frequently absent—18 days during kindergarten at Crum Elementary School, 28 days during first grade at the Kenova Elementary School, and 12 days during second grade at the Kenova Elementary School. Tara said that some of her missed school days were caused by "not getting up." Mrs. Dancy frequently instructed the school to send Tara to the house of Tara's friend. Mrs. Dancy said the visits allowed for additional play time.[1]

On July 9, 1991, Mrs. Dancy entered an alcoholism treatment program. After successfully completing the treatment program, Mrs. Dancy attended several Alcoholics Anonymous meetings and several persons testified that Mrs. Dancy's parenting skills were not affected. After treatment, Mrs. Dancy suffered a relapse and on October 11, 1991, the Department filed a petition in the Circuit Court of Wayne County seeking Tara's custody alleging that Mrs. Dancy failed "to properly supervise the child and ... [left] the child with undesirable people; and, that the mother stays out drinking." After a hearing, the Circuit Court of Wayne County granted the Department temporary legal and physical custody of Tara.

After the Department's petition, Mr. Dancy petitioned for Tara's custody simultaneously in Wayne County, where the Department had been awarded temporary custody of his child, and in Wyoming County, where he lives. The Wyoming County family law master found a substantial change of circumstances and awarded Mr. Dancy temporary custody until the end of the 1991–92 school year. The Circuit Court of Wyoming County affirmed the temporary change of custody.

While in her father's custody, because of Mr. Dancy's job, Tara's afternoon care is provided by her father's girlfriend. Tara continued to do well in school and missed only three and a half days—two days for court appearances, one day for a doctor's appointment and a half day for a funeral. According to an August 18, 1992 custody assessment report from Catherine Mueller–Bell, M.A. and Heather Hagerman, Ph.D., Tara is a well-adjusted child who "does not have a preference as to which parent she lives with." The assessment report notes that although Tara was not abused by either parent, she "chooses to forget a lot of her mother's past behavior." The report noted that Tara's feelings of loyalty and protectiveness for both parents was an "appropriate

---

1. Mrs. Dancy asserts that the Department's report failed to note that she was waiting at the friend's house for the afternoon visits and that she and Tara would return to their home together.

dynamic" and concluded by recommending additional evaluations.

Mrs. Dancy, who has been primarily a homemaker, testified that she stopped drinking, started taking refresher classes and plans to pursue a degree in cosmetology. Mrs. Dancy acknowledged she talked to Tara about how the custody question might be influenced by Tara's performing poorly in her new school.

On January 13, 1992, the Circuit Court of Wayne County dismissed the Department's petition and ordered the Department to develop a reunification plan. After determining that Mrs. Dancy had complied with the Department's service plan, the Wyoming County family law master recommended that Tara be returned to Mrs. Dancy's custody. The family law master heard testimony from Sister Andrea Donnelly, M.A., Mrs. Dancy's substance abuse therapist. Sister Donnelly testified that in her opinion Mrs. Dancy "would do absolutely well with her and I think it would help Betti to stay sober, too, and to continue with her programs." When asked if Mrs. Dancy's having custody of the child "would be in the child's best interest," Sister Donnelly replied, "Yes, ma'am, I do."

Mr. Dancy appealed the family law master's decision to the Circuit Court of Wyoming County, who remanded the case to the family law master to determine if the return to her mother's custody would promote Tara's best interests. The family law master again recommended Tara be returned to Mrs. Dancy's custody. After the circuit court adopted the family law master's recommended decision, Mr. Dancy appealed to this Court. After the circuit court's decision, Mrs. Dancy took immediate custody of Tara on a weekend visit and refused to allow Tara to complete the remaining school year in Wyoming County. Because of a stay pending Mr. Dancy's appeal, Tara was returned to and remains in her father's custody.

On appeal, Mr. Dancy maintains that: (1) the family law master lacked jurisdiction to modify temporarily a final decree; (2) the circuit court erred in finding Mrs. Dancy to be a fit parent and in considering the testimony of Sister Donnelly, Mrs. Dancy's substance abuse counselor; and (3) the circuit court failed to consider the best interest of the child.

I

"The pole star in child custody cases is the welfare of the child." *David M. v. Margaret M.*, 182 W.Va. 57, 60, 385 S.E.2d 912, 916 (1989). This Court's focus on the child's welfare in a custody matter is long standing and has been repeatedly acknowledged. *See David M., id.; J.B. v. A.B.*, 161 W.Va. 332, 335–36, 242 S.E.2d 248, 251 (1978); *Funkhouser v. Funkhouser*, 158 W.Va. 964, 969, 216 S.E.2d 570, 573 (1975); *Boos v. Boos*, 93 W.Va. 727, 117 S.E. 616 (1923); *Dawson v. Dawson*, 57 W.Va. 520, 50 S.E. 613 (1905). Indeed, "all parental rights in child custody matters are subordinate to the interests of the innocent child." *David M., supra*, 182 W.Va. at 60, 385 S.E.2d at 916. *See In re Lacey P.*, 189 W.Va. 580, 584, 433 S.E.2d 518, 522 (1993).

■ Mr. Dancy argues that Mrs. Dancy is unfit because of her drinking problems. Mrs. Dancy maintains that she is fit because her drinking is under control. In Syl. pt. 2, *Garska v. McCoy*, 167 W.Va. 59, 278 S.E.2d 357 (1981), we stated that "the law presumes that it is in the best interests of . . . [very young] children to be placed in the custody of their primary caretaker, if he or she is fit." In Syl. pt. 5, *David M., supra*, we adopted specific objective criteria for determining parental fitness.

To be considered fit, the primary caretaker parent must: (1) feed and clothe the child appropriately; (2) adequately supervise the child and protect him or her from harm; (3) provide habitable housing; (4) avoid extreme discipline, child abuse, and other similar vices; and (5) refrain from immoral behavior under circumstances that would affect the child. In this last regard, restrained normal sexual behavior does not make a parent unfit.

*See Simmons v. Comer*, 190 W.Va. 350, 354 n. 2., 438 S.E.2d 530, 534 n. 2 (1993); *John D.K. v. Polly A.S.*, 190 W.Va. 254, 260, 438 S.E.2d 46, 52 (1993).

In this case, the record shows that Mrs. Dancy's alcoholism did interfere with her

ability to supervise her child as shown by Tara's excessive absences from school and by leaving Tara without proper supervision while Mrs. Dancy was out drinking. Although Mrs. Dancy acknowledges these problems, she maintains her alcoholism is under control. To show her fitness, Mrs. Dancy offered testimony from her substance abuse counselor and several friends.

Based on the evidence, we find proper the circuit court's award of temporary custody to Mr. Dancy[2] and we agree with the circuit court that Mrs. Dancy has shown that with her alcoholism under control she is a fit parent.

In *Rozas v. Rozas*, 176 W.Va. 235, 239, 342 S.E.2d 201, 205 (1986), we noted the process a court should follow to decide a custody issue: first, the court should consider the fitness of each parent and award custody to the fit parent; second, if both parents are fit, then custody should be determined under the "primary caretaker parent" rule of *Garska, supra*; and, finally, if neither parent is the "primary caretaker," then custody should be determined by examining the best interests of the child.

Although we have acknowledged that "courts cannot use the best interest of the child doctrine to strip a *fit* natural parent of his child," *Rozas, supra*, 176 W.Va. at 238, 342 S.E.2d at 205 (quoting Syl. Pt. 3, *Hammack v. Wise*, 158 W.Va. 343, 211 S.E.2d 118 (1975), note 4), Mrs. Dancy lost custody temporarily of her child because she was unfit.

In this case Mrs. Dancy has shown that she regained her fitness, and according to her substance abuse counselor it would be in the child's best interest to be returned to Mrs. Dancy. Both the family law master and the circuit court found that it would be in Tara's best interest to be returned to Mrs. Dancy's custody.

II

We have consistently held that a custody decision by a circuit court will not be set aside unless the court abuses its discretion or makes a clearly erroneous application of the law. Syl. pt. 2, *Funkhouser, supra* stated:

> The exercise of discretion by a trial court in awarding custody of a minor child will not be disturbed on appeal unless that discretion has been abused: however, where the trial court's ruling does not reflect a discretionary decision but is based upon an erroneous application of the law and is clearly wrong, the ruling will be reversed on appeal.

*In accord* Syl. pt. 3, *John D.K. v. Polly A.S., supra;* Syl. pt. 4, *Judith R. v. Hey*, 185 W.Va. 117, 405 S.E.2d 442 (1990); Syl. pt. 1, *David M., supra.*

In this case, we conclude that the circuit court did not abuse his discretion by adopting the family law master's recommendation that Tara be returned to Mrs. Dancy's custody, given that the modification of custody was specifically enunciated as temporary and that Mrs. Dancy lived up to the conditions for restoration of custody, namely, rehabilitation from an alcohol problem. However, upon the return of Tara to her mother, should Mrs. Dancy be unable to abstain from alcohol, that inability would be a sufficient change of circumstance to constitute proper grounds for permanent modification of custody and return of custody to the father.

For the above stated reasons, the judgment of the Circuit Court of Wyoming County is affirmed.

Affirmed.

---

2. Mr. Dancy argues that the family law master lacked jurisdiction to modify temporarily the custody order and should have awarded him permanent custody. However, the temporary custody order was affirmed by the circuit court. In *J.A.S. v. D.A.S.*, 170 W.Va. 189, 292 S.E.2d 48 (1982) (per curiam), we upheld a temporary transfer of custody because of a deterioration of the mother's ability to care for her child caused by the mother's drinking problem. We noted that "the trial court recognized that if the appellant could overcome her drinking problem, it would be possible for her to regain her child." *J.A.S.*, 170 W.Va. at 191, 292 S.E.2d at 50.