# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Spring 2026 Term

_____

No. 25-ICA-271

_____

CHANDRA T.,
Respondent Below, Petitioner,

v.

ROBERT M.,
Petitioner Below, Respondent.

FILED

**February 9, 2026**

**released at 3:00 p.m.**
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

_____

Appeal from the Family Court of Kanawha County
Honorable Kelly C. Pritt, Judge
Civil Action No. FC-20-2021-D-56

AFFIRMED, in part, and REMANDED with instructions

_____

Submitted: January 14, 2026
Filed: February 9, 2026

Rosalee Juba-Plumley, Esq.
Eleanor, West Virginia
Counsel for Petitioner

Tim C. Carrico, Esq.
Joshua M. Fix, Esq.
Carrico Law Offices, LC
Charleston, West Virginia
Counsel for Respondent

CHIEF JUDGE GREEAR delivered the Opinion of the Court.

GREEAR, Chief Judge:


Petitioner Chandra T. ("Mother") appeals an order of the Family Court of Kanawha County, entered on June 10, 2025, modifying and removing the supervision and non-overnight restrictions on Respondent Robert M.'s ("Father") parenting time. On appeal, Mother raises three assignments of error. First, Mother argues that the family court abused its discretion by disregarding the testimony of a witness certified to offer expert opinion regarding the mental health and welfare of the parties' children. Second, Mother contends that the family court abused its discretion by modifying the parenting plan based on an erroneous finding that a substantial change in circumstances occurred that was not anticipated in the prior custody order and a flawed application of the best interests of the child analysis. Finally, Mother asserts that the family court's modification of the parenting plan based on a finding that Father's limiting factor had been alleviated undermines the legislative purpose and intent of the West Virginia Domestic Violence Act ("WVDA"), West Virginia Code §§ 48-26-101-1101.


Based upon our review of the record, applicable law, and the oral and written arguments of counsel, we find that the family court did not abuse its discretion in discrediting the subject expert testimony. The family court has discretion to assess the reliability and weight of expert evidence and, in this instance, made specific findings as to why it found a portion of the expert's testimony unreliable. Additionally, based on a finding that a limiting factor that previously mandated restrictions to Father's parenting time was

1

alleviated, we find that the family court did not abuse its discretion in concluding that a substantial change in circumstances occurred that justified modifications to the parenting plan that serves the best interests of the children. Finally, while we find that the family court's findings are not at odds with the WVDA, we find error with the family court's failure to address specifically in its order whether the modified parenting plan can adequately protect the children and Mother from harm, as required by West Virginia Code § 48-9-209(c). Accordingly, for these reasons, explained in more detail below, we affirm, in part, and remand with instructions for the Kanawha County Family Court to make special written findings regarding the applicable statutory provision.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

The parties are the biological parents of two minor twins, born in 2013. On January 20, 2021, Father filed a petition for divorce against Mother, alleging irreconcilable differences. Mother filed a counter petition for divorce, alleging, among other things, that Father committed domestic violence against her in the presence of their children, resulting in the issuance of a domestic violence protective order ("DVPO") against Father on December 11, 2020.

As set forth in the DVPO, the domestic incident occurred on November 25, 2020, when Father made threats to "blow his brains out" if Mother left with the children. Recordings submitted to the family court also capture the children screaming "get off my mommy" and Father telling the children to "hug me because you will probably never see

me again." The DVPO awarded Father supervised visitation with the children every Saturday from noon until 4:00 p.m. and on Christmas Eve from noon until 4:00 p.m. The DVPO remained in place for 180 days, until June 9, 2021. Father was convicted of domestic battery in magistrate court thereafter, on December 8, 2021.

The divorce proceeding was bifurcated from the custody proceeding, and a final divorce order was entered on June 24, 2021. The parents operated under a temporary parenting plan, wherein Mother was designated as the primary residential custodian and Father was granted supervised visitation each weekend, alternating between Saturday and Sunday from 10:00 a.m. to 3:30 p.m.[1] The family court imposed these restrictions on Father's parenting time due to emotional and psychological harm caused to the children as a result of his domestic violence against Mother.

Dr. Timothy Saar, Ph.D., conducted a parental fitness evaluation of Father and recommended that Father participate in counseling with an individual qualified in dealing with personality disorders. Father successfully participated in the recommended therapy. On July 23, 2021, Dr. Saar sent a letter to the family court noting, in his professional opinion, the visitation schedule should remain unchanged as he had significant concern for Father's emotional instability and lack of insight into his behavior.

---

[1] At some point, Father's parenting time increased to every other weekend on Saturday from 9:00 a.m. to 7:00 p.m. and Sunday from 9:00 a.m. to 5:00 p.m., as well as Thursday from 4:30 p.m. to 8:00 p.m. on weeks that Mother had the children on the weekend. All of Father's parenting time was supervised by his parents.

The family court held a hearing on February 16, 2022, at which time Dr. Saar recommended that Father's parenting time increase but remain supervised. He further recommended that the children and Father participate in therapy together and that the children remain in individual therapy with their current provider so that Father's supervised visitation could be monitored. Pursuant to Dr. Saar's recommendation, the children commenced therapy with Jody Hensley, MA LPC, in July of 2022.

On November 22, 2022, Ms. Hensley filed a letter with the family court stating that both children adamantly expressed not wanting to be alone with Father or participate in therapy with him. On April 10, 2023, Ashley Cavender, MA, a licensed psychologist who conducted family therapy with Father and the children, filed a letter with the family court stating that one of the children expressed that she was not comfortable in Father's home and was adamant that she did not want unsupervised or overnight visits to occur. The other child stated that he did not want any visits with his Father. Ms. Cavender noted that family therapy was unsuccessful because both children were not mentally or emotionally prepared to confront Father. Ms. Cavender recommended that family therapy end and that both children continue with individual therapy with Ms. Hensley until they are ready to confront Father.

On April 21, 2023, the family court ordered in-camera interviews with the children to occur on June 6, 2023. Following the interviews, the family court entered an order stating, based on the interviews, that the court was not inclined to allow Father to

4

have unsupervised parenting time with the children without additional evidence. The family court then granted Father leave to submit videos and pictures from his visits with the children that he claimed contradicted the need for continued supervised visitation. The family court reviewed the pictures and videos and held that they appeared inconsistent with the representations of the children during their in-camera interviews. Accordingly, the family court scheduled an evidentiary hearing for August 22, 2023.

Following the evidentiary hearing, the family court entered its October 13, 2023, Final Order-Custody. The order first recounted prior, relevant testimony and submissions of Dr. Saar, Ms. Hensley, and Ms. Cavender and then went on to provide an overview of the testimony that was elicited during the August 22, 2023, hearing. According to the family court's order, Ms. Hensley testified that the children did not fundamentally fear their father or fear harm from their father, but rather, explained that the children's fear was based on their belief that if their father hurt their mother, they would have to live with their father. Ms. Hensley further testified that if the family court were to allow Father to have unsupervised visitation with the children, then his unsupervised parenting time should be integrated over time. She also acknowledged that the pictures and videos submitted by Father called into question the veracity of the information that the children provided directly to the family court and their providers regarding their desire to not be alone with their father. In response to Mother's allegation that the pictures and videos were staged, Ms. Hensley testified that she could not state with any certainty whether that was the case.

Mother testified that she believed that the pictures and videos presented by Father to the Court were staged. She testified that the children were not ready to be left alone with their father. She further testified that one child experiences anxiety and acid reflux, which Mother directly attributed to alleged PTSD associated with Father's domestic violence.[2] Mother also asserted that the same child is a "people pleaser" and suggested that such behavior was reflected in the pictures and videos submitted by Father. Father testified and requested an expansion of his parenting time and unsupervised visitation with his children. He further testified that he was agreeable to a schedule that would phase in his unsupervised parenting time.

Based on this evidence, the family court found that the children were not fundamentally afraid of being left alone with Father; that the pictures and videos presented by Father were not staged or contrived; that Father had fully exercised his supervised parenting time and complied with all court orders regarding his participation in counseling, therapy, and a psychological evaluation; that it was not in the children's best interests to expand Father's actual parenting time; and that it was in furtherance of their best interests to commence unsupervised visitation with Father in an integrated manner. To that end, the family court adopted a modified parenting plan that maintained the parties' parenting

---

[2] Despite Mother's testimony, the family court noted that no evidence was presented establishing, by a preponderance of evidence, that either child suffers from PTSD as a result of the domestic violence incident. The court further found that no evidence established that either child experiences anxiety, emotional distress, acid reflux, or any other adverse effect when left alone with Father.

schedule but integrated unsupervised parenting time for Father. Specifically, the court granted Father three hours of unsupervised parenting time on his Saturdays with the children from August 22, 2023, to October 22, 2023, and fully unsupervised parenting time on his Saturdays with the children beginning October 22, 2023. The family court further granted either parent leave to seek modification of the parenting plan without the requirement of showing a substantial change in circumstances. Neither the October 13, 2023, Final Order-Custody nor the February 13, 2024, Addendum thereto were appealed.[3]

On August 1, 2024, Father filed a petition for modification of the parenting plan claiming that the parenting schedule had transpired with no issues and seeking a modification to allow him unsupervised, overnight visits with the children. The family court conducted a final hearing on March 19, 2025, during which Mother argued that the family court did not have authority to circumvent the modification statute by excusing Father from demonstrating a substantial change in circumstances. In light of Mother's argument, Father moved orally to amend his petition to request a modification of the parenting plan based on a change in circumstances, namely, that the parenting plan had transpired with "no reported incidents or issues" and that Father had exercised unsupervised parenting time with the children since October 2023 without issue. Mother did not object, and the family court granted Father's motion to amend.

---

[3] The February 13, 2024, Addendum to Final Order-Custody adopted the parties' agreed-to holiday schedule.

Following the hearing, the family court entered a Final Order Granting Modification of Custody on June 10, 2025. In that order, the family court noted that Ms. Hensley testified, in her opinion, that the Court should not grant Father's petition for modification and that more unsupervised and/or overnight parenting time would not be in the children's best interests because they fundamentally fear their father. The family court's order went on to find that

> the testimony of [Ms.] Hensley should be discredited in part. … In previous testimony, Jody Hensley, clearly stated the children did not fundamentally fear their father but feared that their Father would harm their Mother and they would be forced to live with their Father. When questioned about the change in her testimony, Ms. Hensley simply stated that she did not remember her original testimony. Jody Hensley is the children's treating therapist. Her opinion is very limited because of her lack of contact with the children's Father. The basis of her opinion is strictly based off the minor children and their expressed preferences.

The family court further found that Father having overnight visitation with the children was in furtherance of their best interests; that the previously found limiting factors had been alleviated as no further allegations of domestic violence had occurred since fall of 2020 and Father had exercised limited, unsupervised parenting time since October of 2023 without any limiting factors occurring; that both the supervision and non-overnight restrictions on Father's parenting time should be removed; that "the expansion of Father's parenting time should remain incremental rather than moving immediately to a (50-50) allocation schedule" because the children were not accustomed to having overnight visits with Father; and that the presumption that a 50-50 custodial allocation in furtherance of the children's best interests had been rebutted.

8

Based on these findings, the family court held that Father had proven a change in circumstances not contemplated by the family court's prior order and that modification of the parenting plan was in the best interests of the children. Accordingly, the family court removed Father's supervised restriction, allowing for immediate unsupervised parenting time. Additionally, the family court granted Father, beginning in July 2025, overnight visitation with the children every other weekend from Friday at 5:00 p.m. to Sunday at 5:00 p.m. as well as on Thursday after school (or 3:00 p.m.) until Friday at 5:00 p.m. on weeks that Mother had the children on the weekend. It is from this order that Mother appeals.

## II.     STANDARD OF REVIEW

In appeals from family court proceedings, our standard of review is as follows:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (specifying standards for appellate court review of family court orders). "Questions relating to . . . the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syl. Pt.,

9

*Nichols v. Nichols*, 160 W. Va. 514, 236 S.E.2d 36 (1977). An appellate court may reverse for abuse of discretion if "a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed but the [lower] court makes a serious mistake in weighing them." *Gentry v. Mangum*, 195 W. Va. 512, 520 n.6, 466 S.E.2d 171, 179 n.6 (1995). With these standards in mind, we turn to the issues raised on appeal.

## III. DISCUSSION

The first issue on appeal is whether the family court abused its discretion by discrediting the expert testimony of Ms. Hensley, the children's court-appointed therapist. In arguing that the family court should have accepted Ms. Hensley's testimony in full, Mother contends that Ms. Hensley based her opinion on information provided to both her and the family court, that the final order did not accurately reflect Ms. Hensley's testimony, and that Father offered no rebuttal expert testimony contradicting Ms. Hensley's opinion. We disagree and find that Mother's argument misconstrues the family court's role in weighing expert testimony.

The Supreme Court of Appeals of West Virginia ("SCAWV") has consistently held that courts are not required to accept expert testimony simply because it is uncontroverted. Rather, courts retain discretion to assess the credibility, weight, and reliability of expert opinions and may accept or reject such testimony, in whole or in part, provided it articulates a reasoned basis for doing so. *See In re M.M.*, 251 W. Va. 74, 87, 909

10

S.E.2d 109, 122 (2024) (recognizing that credibility determinations of expert testimony are within the sound discretion of the trial court). However, in *Jonpaul C. v. Heather C.*, 248 W. Va. 687, 696, 889 S.E.2d 769, 778 (Ct. App. 2023), this Court found that it was, based on the facts and circumstances present in that case, an abuse of discretion for the family court to entirely disregard expert testimony without articulating a basis for why it is being discredited.

In the underlying case, unlike *Jonpaul C.*, the family court did not summarily disregard Ms. Hensley's testimony. Instead, the court provided specific findings explaining why it declined to credit a portion of Ms. Hensley's testimony. Specifically, Ms. Hensley testified that more unsupervised and overnight parenting time with Father was not in the children's best interests because the children feared Father. However, the family court observed that this testimony was inconsistent with Ms. Hensley's prior testimony, in which she stated that the children did not harbor a fundamental fear of Father but instead feared that he might harm their mother and they would be required to live with him. Ms. Hensley's prior characterization of the children's fear was expressly set forth in the family court's prior October 13, 2023, order which was not appealed and, therefore, became final and binding on both the parties and court.[4] When questioned about this perceived inconsistency

---

[4] Any argument that the family court's October 13, 2023, order contained inaccurate findings regarding the substance of Ms. Hensley's testimony is unavailing. The October 13, 2023, order was not appealed, and thus, the family court was entitled to rely on its findings in that order when assessing subsequent testimony. In other words, it was not an abuse of discretion for the family court to credit its prior, unchallenged findings and

between her prior and current testimony, Ms. Hensley stated that she did not recall testifying that the children did not fundamentally fear Father. We find the family court was entitled, and well within its discretion, to rely on Ms. Hensley's lack of recall in assessing the reliability of her changed opinion.

The family court's assessment of Ms. Hensley's testimony did not end there. The court went on to find that Ms. Hensley's opinion was based almost exclusively on the children's expressed preferences, given she did not have contact with Father and had not independently observed his interactions with the children. Notably, Ms. Hensley's role was confined to counseling the children and did not include determining appropriate custodial responsibilities or assessing whether Father was fit to exercise parenting time. Based on such circumstances, we find that the family court acted within its discretion in assigning limited weight to Ms. Hensley's testimony.[5] *See In re D.S.*, 251 W. Va. 466, 472, 914 S.E.2d 701, 707 (2025) (explaining, appellate courts "review the [lower] court's decision under

---

determine that Ms. Hensley's subsequent testimony was inconsistent with those findings and less persuasive as a result.

[5] We find Mother's reliance on *Nathan H. v. Ashlee R.*, No. 21-1019, 2023 WL 245344 (W. Va. Jan. 18, 2023) (memorandum decision) misplaced. In *Nathan H.*, a motion for modification of the parenting plan was made to accommodate the preferences of the child, who was over fourteen years of age, pursuant to West Virginia Code § 48-9-402(b)(3). As such, the SCAWV determined that it was improper for the family court to wholly disregard the expert testimony of the child's therapist, who advocated for the child's preferences regarding custodial allocation. In the instant case, unlike *Nathan H.*, the children are not yet fourteen years of age, and the motion for modification was based on a substantial change in circumstances, pursuant to West Virginia Code § 48-9-401, and not § 48-9-402(b)(3).

the deferential standards . . . and do not reweigh the evidence or make credibility determinations.").

Next, we consider whether the family court abused its discretion by modifying the parties' parenting plan based on a purportedly erroneous finding that a substantial change in circumstances occurred and a flawed analysis of the children's best interest standard. West Virginia Code § 48-9-401 establishes three criteria for modification of a parenting plan based on a change in circumstances:

> [A] court shall modify a parenting plan order if it finds, on the basis of facts that were not known or have arisen since the entry of the prior order and were not anticipated in the prior order, that a substantial change has occurred in the circumstances of the child or of one or both parents and a modification is necessary to serve the best interests of the child.

W. Va. Code § 48-9-401(a). As the party seeking modification, Father bore the burden of establishing a change in circumstances that meets this standard. *See Goff v. Goff*, 177 W. Va. 742, 356 S.E.2d 496 (1987) (holding that the burden of proof is on the parent seeking to modify the parenting plan).

Here, Father identified the fact that he had exercised unsupervised parenting time for an 18-month duration with "no reported incidents or issues" as a changed circumstance to support modification of the parenting plan. On appeal, Mother argues that Father's alleged change in circumstance was anticipated by the October 13, 2023, order. In support of her argument, Mother contends that the family court would not have ordered

gradual increases in Father's unsupervised parenting time had it anticipated that issues would have transpired with Father during that time. While the family court may have assumed that Father would exercise his contemplated parenting time without incident, the parenting plan did not identify that assumption as a basis to support a future modification.

The SCAWV recently explained what is meant by the phrase "not anticipated" as used in West Virginia Code § 48-9-401(a):

> "[U]nder the plain meaning of the statute, the relevant question is not whether a particular change in circumstance *could* have been anticipated, but whether the parenting plan actually did anticipate, and provide accommodation for, the particular change." *Skidmore v. Rogers*, 229 W. Va. 13, 21, 725 S.E.2d 182, 190 (2011). "The phrase 'not anticipated therein' does not mean that the change in circumstance could not have been anticipated generally, but rather that the parenting plan order does not make provisions for such a change." *Ibid.*

*Jared M. v. Molly A.*, 246 W. Va. 556, 562, 874 S.E.2d 358, 364 (2022) (emphasis in original). In the instant case, the parenting plan sought to be modified makes no provision for the change in circumstances identified by Father. By virtue of awarding Father gradual increases in unsupervised parenting time, the family court surely anticipated that Father would engage in that time without occurrences or worsening of limiting factors, including reports of domestic violence. Yet, the parenting plan does not incentivize Father to maintain this progress by stating that adjustments will occur if Father engages in parenting time without such occurrences. The parenting plan does not state, for example, what would happen were Father to fully exercise his contemplated, unsupervised parenting time without the occurrence or worsening of a limiting factor. Nor does the parenting plan state

14

that adjustments will occur if Father engages in such parenting time without further reports of domestic violence. As the parenting plan did not provide for adjustments in the event Father fully exercised his unsupervised parenting time without an occurrence or worsening of a limiting factor, such change was not "anticipated" in the parenting plan within the meaning of West Virginia Code § 48-9-401(a). *See id.* at 562, 874 S.E.2d at 364 (finding, identified changes in circumstances were not "anticipated" where the parenting plan was silent on those matters).

As we find that Father's alleged change was not anticipated under the parenting plan, the next inquiry is whether the change was "substantial." For purposes of a modification based on a change in circumstances, West Virginia Code § 48-9-401(d) provides that "the occurrence or worsening of a limiting factor, as defined in [West Virginia Code] § 48-9-209(a) . . . , after a parenting plan has been ordered by the court constitutes a substantial change of circumstances . . . ." Although the statute expressly contemplates a substantial change in circumstances based upon the occurrence or worsening of a limiting factor, it is silent as to whether the improvement or alleviation of a previously found limiting factor may also constitute a substantial change in circumstances. When faced with this silence, we must ascertain and give effect to the intent of the Legislature in enacting the statute in question. *See* Syl. Pt. 1, *Smith v. State Workmen's Comp. Com'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975) ("The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."). "In ascertaining legislative intent, effect must

15

be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation." *Id.* at 109, 219 S.E.2d at 362, Syl. Pt. 2.

The Legislature was careful to identify three circumstances that do *not* justify a modification of a parenting plan pursuant to West Virginia Code § 48-9-401:

> (c) Unless the parents have agreed otherwise, the following circumstances do not justify a significant modification of a parenting plan except where harm to the child is shown:
>
> (1) Circumstances resulting in an involuntary loss of income, by loss of employment or otherwise, affecting the parent's economic status;
> (2) A parent's remarriage or cohabitation, except under the circumstances set forth in § 48-9-209(f) of this code; and
> (3) Choice of reasonable caretaking arrangements for the child by a legal parent, including the child's placement in day care.

W. Va. Code § 48-9-401(c). By expressly enumerating circumstances that do not constitute a substantial change, the Legislature demonstrated its intent to exclude only those specific circumstances. Significantly, the statute contains no language that forecloses the lessening, improvement, or alleviation of a limiting factor as a change in circumstances warranting modification of a parenting plan. Accordingly, when read as a whole, we conclude that West Virginia Code § 48-9-401 cannot reasonably be interpreted to restrict substantial changes in circumstances to solely the occurrence or worsening of a limiting factor, and we decline to construe this statute so narrowly.

To hold that only the occurrence or worsening of a limiting factor may support a finding of a changed circumstance, while its lessening, improvement, or alleviation may not, would produce an irrational and untenable result. Under such an interpretation, a parent who has remediated a circumstance that previously restricted parenting time would have no means to seek reunification with a child. Such an interpretation would be inconsistent with the statutory scheme and with its underlying purpose, which contemplates both the protection of children and meaningful contact between a child and each parent. *See* W. Va. Code § 48-9-102(a).

This Court has previously recognized, albeit in the context of a Section 209(f) limiting factor, that "[w]hen a parent is determined to be addicted to a substance or is dealing with tendencies of substance abuse, the sobriety and abstinence from such substance provides a basis for modification" under Section 401(a). *Kane M. v. Miranda M.*, 250 W. Va. 701, 705, 908 S.E.2d 198, 202 (Ct. App. 2024) (citing *Dancy v. Dancy*, 191 W. Va. 682, 685, 447 S.E.2d 883, 886 (1994)). *See also Tevya W. v. Elias Trad V.*, 227 W. Va. 618, 626, 712 S.E.2d 786, 794 (2011) (Workman, J., concurring) ("Because the duration of time that a person achieves sobriety is a significant factor in recovery, I believe that continued sobriety should be considered as an additional change in circumstances. A parent who has remained sober for nearly five years has a far more powerful claim to a change in circumstances than a parent who has been drug-free for merely a month. Such long-lasting transformations reveal a level of stability and personal advancement that is more deserving of consideration by the family court"). We now hold that the lessening, improvement, or

alleviation of a previously found limiting factor, as defined under West Virginia Code § 48-9-209[(a)], may constitute a substantial change in circumstances warranting modification of a parenting plan under Section 401(a).

In this regard, the family court found that Father alleviated the previously found limiting factor that restricted his parenting time. In so finding, the family court determined that no party has alleged a single incident of domestic violence committed by Father since the fall of 2020 and that Father has had unsupervised parenting time without any limiting factors occurring. The family court also found previously in its 2023 Final Order-Custody that Father complied with all orders regarding his participation and completion of counseling, therapy, and a psychological evaluation. We do not disturb the family court's conclusion that the totality of this evidence is probative of alleviation of the circumstance that originally justified the restrictions to Father's parenting time and we, accordingly, find no error in this regard. Mother's simple disagreement with the family court's weighing of this evidence does not establish error.

While a change in circumstance is one factor, modification of a parenting plan is also subject to the children's best interests, taking us to the final inquiry under the applicable criteria. *See* W. Va. Code § 48-9-401(a); *see also* Syl. Pt. 3, *Andrea H. v. Jason R.C.*, 231 W. Va. 313, 745 S.E.2d 204 (2013) ("To justify a change of child custody, in addition to a change in circumstances . . . it must be shown that such change would materially promote the welfare of the child."). Mother claims that the family court failed

to consider each factor set forth in West Virginia Code § 48-9-102 in determining the best interests of the children. We disagree.

Throughout West Virginia history, the best interests of the child has been "the polar star" that steers all child custody issues. *Brooke B. v. Donald Ray C.*, 230 W. Va. 355, 738 S.E.2d 21 (2013); *accord* W. Va. Code § 48-9-101(b) (stating, child custody decisions should revolve around the best interests of the children). The Legislature has instructed that the best interests of the child may be facilitated by ensuring the following:

> (1) Stability of the child;
> (2) Collaborative parental planning and agreement about the child's custodial arrangements and upbringing;
> (3) Continuity of existing parent-child attachments;
> (4) Meaningful contact between a child and each parent, and which is rebuttably presumed to be equal (50-50) custodial allocation of the child;
> (5) Caretaking and parenting relationships by adults who love the child, know how to provide for the child's needs, and who place a high priority on doing so;
> (6) Security from exposure to physical or emotional harm;
> (7) Expeditious, predictable decisionmaking and avoidance of prolonged uncertainty respecting arrangements for the child's care and control; and
> (8) Meaningful contact between a child and his or her siblings, including half-siblings.

W. Va. Code § 48-9-102(a). With respect to the rebuttable presumption of equal 50-50 custody, West Virginia Code § 48-9-102a provides:

> There shall be a presumption, rebuttable by a preponderance of the evidence, that equal (50-50) custodial allocation is in the best interest of the child. If the presumption is rebutted, the court shall, absent an agreement between the parents as to all matters related to custodial allocation, construct a parenting

time schedule which maximizes the time each parent has with the child and is consistent with ensuring the child's welfare.

When determining the best interests of a child, "all relevant factors must be considered, and the family court must make adequate findings of fact and conclusions of law to support its decision and [] allow for meaningful appellate review." *Stacey J. v. Henry A.*, 243 W. Va. 150, 158-59, 842 S.E.2d 703, 711-12 (2020).

While the family court's order on appeal did not conduct a factor-by-factor analysis of the best interest statute, it adequately reflects consideration of the applicable factors for meaningful appellate review. With respect to the first and third factors—stability of the children and continuity of existing parent-child attachments—the family court recognized that the children were not accustomed to having overnight visitations with their father, and thus, a gradual increase in Father's unsupervised parenting time was appropriate as opposed to an immediate expansion to a 50-50 allocation. The second factor— collaborative parental planning and agreement about the child's custodial arrangement and upbringing—is neutral. The parents previously mediated an agreement on holiday time. No evidence was presented from which this Court can glean that the parents have been unable to collaborate in this regard, as further demonstrated by the family court's directive for the parents to continue mutually determining holiday time. The fourth factor—meaningful contact between a child and each parent, which is rebuttably presumed to be equal custodial allocation—disfavors removing Father's restrictions or, at best, is neutral. The family court

found that the statutory presumption favoring a 50-50 allocation was rebutted due to Father's prior domestic violence toward Mother in 2020.

The fifth factor—caretaking and parenting relationships by adults who love the child, know how to provide for the child's needs, and who place high priority on doing so—weighs in favor of the modification. As the family court observed, Father fully exercised his parenting time with his children without reports of domestic violence or the occurrence of any limiting factors. No evidence was presented that suggests Father does not prioritize his children's needs. The sixth factor—security from exposure to physical or emotional harm—is neutral. The family court recognized the emotional and psychological harm that Father's prior domestic violence towards Mother in 2020 had on the children. Yet, the family court also considered that no further allegations of domestic violence had occurred since that incident; that Father has had limited, unsupervised parenting time with his children since October of 2023 without a limiting factor occurring; and that Father alleviated his previous limiting factor. In addition, the court previously found, in its unappealed October 13, 2023, Final Order-Custody, that father successfully participated in and completed all court-ordered therapy, counseling, and a psychological evaluation. The seventh factor—expeditious, predictable decisionmaking and avoidance of prolonged uncertainty respecting arrangements for the child's care and control—is neutral as there is no evidence in the record that suggests the modifications at issue impact the children's routines or the parties' parenting roles. The eighth factor—meaningful contact between a child and his or her siblings—is not applicable since the children have not been separated

for custodial purposes. Upon our review of the record, we cannot find that the family court failed to consider these factors. Viewed as a whole, the family court's June 10, 2025, order evinces careful consideration of the statutory framework, the evidence presented, and the children's needs. Accordingly, we find that the family court acted within its discretion in modifying the parenting plan based on its determination that removing supervised and non-overnight restriction from Father's parenting time would serve the best interests of the children.

As to her final issue on appeal, Mother argues that the family court's removal of Father's supervision and non-overnight restrictions disregarded the legislative intent of the WVDA and relieved Father of his burden of proving that this modification would not endanger the children in accordance with West Virginia Code § 48-9-209(c). Although we disagree that the WVDA precludes the family court's modification of the parenting plan, we are unable to determine whether removal of Father's supervision and non-overnight restrictions was appropriate because the final order erroneously failed to make specific, written findings addressing whether this modification could adequately protect the children from harm.

West Virginia Code § 48-9-209[(a)] identifies a non-exhaustive list of limiting factors that a family court must consider when implementing a parenting plan. One of those factors is whether a parent has committed domestic violence. *See* W. Va. Code § 48-9-209[(a)](3). Upon a court's finding that a parent has committed domestic violence,

Section 209(b) states, "the court shall impose limits that are reasonably calculated to protect the child . . . from harm." This section further provides several restrictions or measures to protect children, such as supervised parenting time, denial of overnight custodial responsibility, an adjustment to the parents' custodial responsibilities, and any other conditions that the court determines to be necessary to provide for the safety of the child. *See* W. Va. Code § 48-9-209(b). Further, Section 209(c) provides that if a parent has committed domestic violence, "the court may not allocate custodial responsibility . . . to that parent without making *special written findings* that the child and other parent can be adequately protected from harm by such limits as it may impose under subsection (b) of this section." W. Va. Code § 48-9-209(c) (emphasis added). A parent found to have committed domestic violence bears the burden of proving that "an allocation of custodial responsibility . . . to that parent will not endanger the child . . . ." *Id.*

The foregoing principles must be read in conjunction with the WVDA when, as here, a perpetrator of domestic violence seeks modification of custodial responsibilities. The WVDA provides that "[a] court may award visitation of a child by a parent who has committed domestic violence only if the court finds that adequate provision for the safety of the child and the petitioner can be made." W. Va. Code § 48-27-509(a). The Legislature stated that the WVDA must be liberally construed to, among other things, "recognize that domestic violence constitutes serious criminal behavior with potentially tragic results" and "that the existence of a former or on-going familial . . . relationship should not serve to

23

excuse, explain or mitigate acts of domestic violence which are otherwise punishable as crimes under the laws of this state." W. Va. Code § 48-27-101(b).

Contrary to Mother's assertion, the family court did not minimize or ignore the long-term emotional impact that domestic violence may have on children. To the contrary, the court expressly considered Father's prior domestic violence toward Mother and relied on that history to conclude that the statutory presumption favoring an equal allocation of custodial responsibility had been rebutted. The court's refusal to award 50-50 custody reflects its recognition of the seriousness of Father's prior domestic violence and its impact on the children, consistent with the WVDA.

Even more, the statutory framework does not categorically bar a perpetrator of domestic violence from obtaining a modification to a parenting plan. Rather, West Virginia Code § 48-9-209(c) places the burden on the offending parent to establish that a further allocation of custodial responsibility will not endanger the children. While the family court expressly recognized this standard, its order failed to include sufficient analysis or special written findings addressing whether the children can be adequately protected from harm by removing the supervision and non-overnight restrictions from Father's parenting time. Based on this omission, we find that the family court's order does not satisfy the plain requirements of the applicable code provision. Accordingly, this Court converts the June 10, 2025, final order into a temporary order and remands this matter to the family court with instructions to issue a new order that contains additional findings

analyzing whether the children and Mother can be adequately protected from harm based on the restrictions set forth in the parenting plan. The family court may hold an evidentiary hearing if further factual development is necessary to comply with these instructions.

## IV.    CONCLUSION

For the foregoing reasons, we affirm, in part, the June 10, 2025, Final Order Granting Modification of Custody insofar as it discredited a portion of Ms. Hensley's testimony and found that the alleviation of Father's limiting factor constituted a substantial change in circumstances that warranted modification of the parenting plan in furtherance of the children's best interests. We convert the June 10, 2025, order to a temporary order and remand to the Kanawha County Family Court with instructions to make special written findings addressing whether the children and Mother can be adequately protected from harm based on the restrictions set forth in the parenting plan, in accordance with West Virginia Code § 48-9-209(c).

Affirmed, in part, and Remanded with instructions.